Argued January 11, reversed and remanded February 8, rehearing denied March 8, 1921.

## BRIEDWELL *v.* HENDERSON, SHERIFF.

(195 Pac. 575.)

**Records—Dealers Buying Registered Automobile must have Registration Changed.**

1. Laws of 1919, page 713, Section 9, requiring the buyer of a registered automobile to apply for a change of registration, and making a sale invalid unless the section is complied with, applies without exception, so that a sale of a registered automobile to a dealer is invalid unless the dealer has the registration changed, though the dealer has a dealer's license, as required by the Motor Vehicle Law.

**Records—Failure to Change Automobile Registration Does not Defeat All Right to Car.**

2. Though the failure of the buyer of a registered automobile to have the registration changed, as required by Laws of 1919, page 713, Section 9, invalidates the sale, it does not deprive the buyer of all right to possession of the automobile, so that in an action for claim and delivery by such buyer it was error to exclude evidence of such sale to establish the buyer's right to possession.

---

2. Effect on rights and liabilities of owner of automobile of failure to comply with statutory regulations as to registration, license, etc., see notes in 18 **Ann. Cas.** 242; **Ann. Cas.** 1914A, 128; **Ann. Cas.** 1918D, 847.

Replevin—Special Property may be Proved Under Allegation of General Ownership.

3.   Under an allegation of general ownership in a complaint for claim and delivery, plaintiff may prove a special property entitling him to possession.

Constitutional Law—Invalidity of Emergency Clause cannot be Raised Where Right Originated After Ninety-day Period.

4.   The contention that the Motor Vehicle Law is unconstitutional, because Section 44 thereof declares an emergency, and therefore contravenes Article IX, Section 1a, of the Constitution, forbidding an emergency declaration in any act regulating taxation, cannot be raised in an action for claim and delivery, where plaintiff's title, invalidated by Section 9 of that law, originated after the expiration of the 90-day period, during which the operation of the law would have been suspended under Article IV, Section 28, of the Constitution.

Constitutional Law—Invalidity of Emergency Clause on Re-enactment of Existing Law cannot be Raised by Plaintiff, Whose Title Would be Invalid Under Preceding Law.

5.   Since Section 9 of Motor Vehicle Law of 1919 was a re-enactment of a similar provision in preceding acts, so that it was a restatement or republication of the existing law, plaintiffs, whose title would be invalid under preceding acts, cannot attack the constitutionality of the latest act.

Licenses—License Fees on Automobiles are Sustainable Under the Police Power.

6.   License fees on automobiles imposed by Motor Vehicle Law are sustainable under the police power of the state, in view of the possibility for harm when such vehicles are recklessly driven, and of the great injury to the highways occasioned by them.

Statutes—Declaration of Purpose has Weight—"Preamble."

7.   Motor Vehicle Law, Section 42, declaring it to be an exercise of the police power, while not controlling, is an important factor in determining its character, as is also the recital in the preamble that the legislators informed themselves of the effect of motor vehicles on state highways, since the "preamble," which is an introduction prefixed to a statute reciting the intention of the legislature or the evils leading to the enactment, is evidence of the facts it recites, though not part of the statute.

From Yamhill: HARRY H. BELT, Judge.

Department 2.

From the record we learn that this is an action of claim and delivery, wherein the plaintiff seeks to recover possession of a Ford motor vehicle.   It appears

7. Preamble as aid to construction of statute, see note in Ann. Cas. 1917C, 500.

that one A. J. Syron was the owner of the vehicle in question; that on November 25, 1918, he made application to register the car for the year 1919 and a license covering that year was issued to him by the Secretary of State.   Later the car was mortgaged to the Bank of Linnton to secure a certain promissory note.   It is asserted that Syron went into bankruptcy. An order was made by the referee in bankruptcy directing that the car be turned over to the bank in settlement of its claim.   On the eighth day of August, 1919, the bank assigned the mortgage to a Portland attorney, and on the day following Syron executed and delivered to the attorney a written bill of sale of the car.   On the same day, August 9th, the attorney went to McMinnville and sold the car to the plaintiffs in this action.   During the time of the transfers, the car was in a garage at McMinnville, and after its purchase by plaintiffs, they towed the car to their garage.   On August 14, 1919, the plaintiffs transferred the car to P. S. Seabrook & Company conditionally.   On the day of the alleged transfer, Seabrook & Company made application to the Secretary of State for transfer of the 1919 license from the name of Syron to themselves.   Default was made in the payments due from Seabrook & Company to plaintiffs. The defendant Henderson, sheriff of Yamhill County, by virtue of a writ of execution in his hands against the property of Seabrook & Company, took possession of the car from Seabrook & Company, and advertised the same for sale.   Thereafter, plaintiffs instituted an action for the purpose of recovering possession of the car.   The defendant joined issue as to the ownership.   A trial was had and a judgment of involuntary nonsuit was entered by the court upon motion

of the defendant, from which the plaintiffs appeal to this court.

REVERSED AND REMANDED.    REHEARING DENIED.

For appellants there was a brief with oral arguments by *Mr. W. T. Vinton* and *Mr. Walter L. Tooze, Jr.*

For respondent there was a brief and an oral argument by *Mr. B. A. Kliks.*

BROWN, J.—The trial court entered a judgment of nonsuit in favor of defendant and against plaintiffs because of the provision of Section 9, Chapter 399, Laws of Oregon, 1919, which provides that:

"Upon the purchase of a motor vehicle registered in accordance with this act, the title of the number plates shall vest in the vendee, and said vendee shall within five days after the date of purchase notify the Secretary of State, stating his name and business address, the name of the vendor, the license or registration number and the engine number under which such motor vehicle is registered, upon the receipt of which information the Secretary of State shall transfer the said license or registration number to said vendee.

"A fee of $1.00 shall be paid to the Secretary of State for each transfer, which transfer he shall file in his office and note upon the registration book or index. *No sale* or transfer of any motor vehicle registered under this act *shall be valid* without compliance with the provisions of this section."

1. Plaintiffs, when they purchased the car, failed to give the Secretary of State the notice required by Section 9. In fact, they utterly ignored all the provisions contained in said section relating to the giving of notice, having the registration transferred, or any other matter or thing required by the terms of the provision quoted. They claim that as dealers in motor vehicles, and having secured a license as such

dealers, they are not required to have the license mentioned in Section 9 transferred unless they intend to, and do, operate the transferred car upon the public streets and highways of the state, and that for the foregoing reasons they are not bound by the commands contained in said section of the Oregon Motor Vehicle Law. They contend that the requirement to notify the Secretary of State of the transfer or change of registration or payment of the fee is no concern of theirs, they being fully protected under their dealer's license. We do not agree with plaintiffs. The section of the law under consideration contains no exemptions, no exceptions. The car in the instant case was a registered car, duly licensed to operate upon the public highways of the state. The law demands a report of the sale of a registered vehicle, and a particular method of keeping the record of its transfer is provided. The identity and ownership of cars operated upon the public ways is of concern to the state. The law distinctly denounces the failure to report the sale of a registered vehicle in the following language:

"No sale or transfer of any motor vehicle registered under this act shall be valid without compliance with the provisions of this section."

2. These words are clear, plain, unambiguous, and manifestly mean what they say, and not something else. This provision of the statute is not open to construction. It interprets itself. While Section 9 renders a sale or transfer of a registered car invalid upon failure to comply with its provisions, it does not make a compliance therewith *prima facie* evidence of the ownership of the property in a car so registered as indicated by defendant. The court properly held that plaintiffs were bound by the terms of the statute,

in this: that the sale of the vehicle was invalid. Nevertheless, they had such a special interest in the car that the law authorizes them to maintain an action for its possession. The vehicle was not cast out from the protection of the law by reason of the plaintiffs' failure to observe the statute. The car was property when it was sold; property when the action was instituted; it is property now. Although plaintiffs' title became defective, they came into possession of the car by lawful means. In acquiring its possession, they committed no act of omission or commission that suggests crime or wrong.

3. In an action of claim and delivery under an allegation of general ownership, the plaintiff may prove a special property entitling him to possession. This principle of law is declared by Mr. Justice BURNETT, and supported by much authority, in *Goodwin* v. *Tuttle,* 70 Or. 429 (141 Pac. 1120, 1122), wherein he wrote:

"It has been held in this state in several cases that in replevin under the allegation of general ownership the plaintiff may prove a special property entitling him to possession: *Reinstein* v. *Roberts,* 34 Or. 87 (55 Pac. 90, 75 Am. St. Rep. 564); *Backhaus* v. *Buells,* 43 Or. 558 (72 Pac. 976, 73 Pac. 342); *Culver* v. *Randle,* 45 Or. 491 (78 Pac. 394); *Harvey* v. *Lidvall.* 48 Or. 558 (87 Pac. 895); *Swank* v. *Elwert,* 55 Or. 487 (105 Pac. 901); *Roberson* v. *Ellis,* 58 Or. 219 (114 Pac. 100)."

Mr Justice McCAMANT, in *Swank* v. *Moisan,* 85 Or. 669 (166 Pac. 962, 964), has said:

"The sale of plaintiff's automobile became invalid ten days after the date of sale by operation of this statute. There being nothing immoral or unlawful in the contract of the parties, the law will not leave them where it finds them. Plaintiff could replevy his automobile and recover the value of its use by the defendants."

And authorities there cited.

The court should have admitted Plaintiffs' Exhibit 1 as evidence; likewise, should have permitted proof showing the circumstances of the transfer of the possession of the car from plaintiffs to Seabrook & Company. The failure so to do prejudiced the substantial rights of plaintiffs.

4. Plaintiffs allege that the Oregon Motor Vehicle Law is unconstitutional by reason of the fact that Section 44 thereof declares an emergency and therefore contravenes Section 1–a of Article IX of the Constitution of Oregon providing that:

" * * The legislative assembly shall not declare an emergency in any act regulating taxation or exemption."

Of course, the legislative assembly should never declare an emergency when enacting any law regulating taxation or exemption therefrom. Such is the mandate of the Constitution. But plaintiffs are not in a position to raise that question. The period of 90 days provided by Section 28, Article IV, Constitution, suspending the operation of a law, had expired prior to plaintiffs' deal with Seabrook & Company. It is now, and at the time of the attempted transfer of the motor vehicle in question was, a valid law. The only effect the nonobservance, if it be such, of the provision of the Constitution referred to, could have in the instant case, would be to eliminate Section 44 of the Motor Vehicle Law, containing the emergency clause.

5. Another fact that stands in plaintiffs' way and prevents them from availing themselves of the prohibition contained in the Constitution is, that the statement of law contained in Section 9 of the Oregon Motor Vehicle Law is not a new statute. It has been the law of this state since 1911 and in effect at all

times since then. As stated in *Renshaw* v. *Lane County Court,* 49 Or. 526 (89 Pac. 147):

"A re-enactment of a former statute is considered as a continuation of the language so repeated, and not a new enactment as of that date."

The provision that the Secretary of State have notice of the sale and transfer of a registered motor vehicle, and, in the absence of such notice, that the sale or transfer of such motor vehicle registered under the motor vehicle law shall not be valid, is not a new legislative declaration, but is a restatement or republication of the law as it has existed since the enactment of Section 8 of Chapter 174, Laws of Oregon, 1911. Said Section 9 is a literal copy of Section 8, Laws of 1917, which, in substance, is Section 8 of Chapter 174, Laws of 1911. Hence, the plaintiffs are not in a position to say that Section 9 of the 1919 law is invalid or that they are not bound by the terms of said section for the reasons alleged.

It was stated by Mr. Justice LORD in an opinion rendered by this court in *Elliott* v. *Oliver,* 22 Or. 44 (29 Pac. 1), that:

"This court will avoid deciding upon the constitutionality of a statute whenever there appears in the record any other grounds sufficient to sustain a proper disposition of the case in judgment."

Among other citations, he quotes with approval the following excerpt from Cooley's Constitutional Limitations:

"Where a constitutional question is raised, though it may be legitimately presented by the record, yet if the record present some other and clear ground upon which the court may rest its judgment, and thereby render the constitutional question immaterial to the case, that course will be adopted and the question of constitutional power will be left for consideration

until a case arises which cannot be disposed of without considering it, and when consequently a decision upon such question will be unavoidable.''

To like effect see *State ex rel* v. *Lord,* 28 Or. 530 (43 Pac. 471, 31 L. R. A. 473); *State ex rel.* v. *Malheur County,* 46 Or. 519 (81 Pac. 368); *McKinney* v. *Watson,* 74 Or. 220 (145 Pac. 266).

6. While not deciding as to the constitutionality of the question raised for the reasons hereinbefore stated, we will make the following observations in reference to plaintiffs' assertion that the license fees exacted by the Oregon Motor Vehicle Law are too high and are unreasonable, and cannot be sustained under the exercise of the police power of the state:

7. Section 42 of the Motor Vehicle Law declares its provisions to be an exercise of the police power of the state. In *Portland* v. *Portland Ry. L. & P. Co.,* 80 Or. 305 (156 Pac. 1058), the following excerpt from Gray, Lim. of Tax. Power, 42, is quoted with approval:

''While not absolutely controlling, the legislative designation is an important factor in determining the character of the tax imposed.''

As appears from the preamble of the statute, the members of the Oregon legislature, before enacting the Motor Vehicle Law, carefully informed themselves concerning the effect of the use of motor vehicles, upon the highways of the state.

While a preamble is no part of a statute, it is of importance in gathering the reasons for the passage of such an act as we have under consideration.

''A preamble is an introduction prefixed to a statute, reciting the intention of the legislature in framing it, or the evils which led to its enactment. It is no part of the law. * * It is evidence of the facts it recites'': Bouvier's Law Dictionary.

In *Hendrick* v. *Maryland,* 235 U. S. 622 (59 L. Ed. 385, 35 Sup. Ct. Rep. 142, see, also, Rose's U. S. Notes), it is held:

"The movement of motor vehicles over the highways is attended by constant and serious dangers to the public, and is also abnormally destructive to the ways themselves. Their success depends on good roads, the construction and maintenance of which are exceedingly expensive; and in recent years insistent demands have been made upon the states for better facilities, especially by the ever-increasing number of those who own such vehicles. As is well known, in order to meet this demand and accommodate the growing traffic the State of Maryland has built and is maintaining a system of improved roadways. Primarily for the enforcement of good order and the protection of those within its own jurisdiction the state put into effect the above-described general regulations, including requirements for registration and licenses. A further evident purpose was to secure some compensation for the use of facilities provided at great cost from the class for whose needs they are essential, and whose operations over them are peculiarly injurious."

The Supreme Court of Ohio, in *Allen* v. *Smith,* 84 Ohio St. 294 (95 N. E. 832, Ann. Cas. 1912C, 611), has said:

"Doesn't everybody know that the automobile is a new machine of travel; its use a new use of the highway; that it is dangerous to other travelers; that its power, its capacity for speed, the temptation it affords the reckless driver to operate it at a dangerous rate and in a careless manner, all distinguish the automobile from all other vehicles? Surely it cannot be necessary to further elaborate this fact so patent to every observing and reading person. The automobile is, therefore, a class by itself, the users of such machines a class by themselves, and legislation in recognition of this condition is based upon a solid, easily recognized distinction."

In *Westfalls Storage Co.* v. *Chicago,* 280 Ill. 318 (117 N. E. 439), the court said:

"Motor vehicles have been classified separately from horse-drawn vehicles and have been the subject of separate legislation ever since they came into general use. Their departure in character, use, and speed from horse-drawn vehicles has been so great as to justify such classification. * * These ponderous vehicles, driven by powerful engines, are a menace to the public safety unless managed and driven by persons who are competent and qualified to operate them. Those used for transporting heavy merchandise are practically engine-driven freight cars. The separate classification of motor vehicles, so far as we are advised, has always been upheld by decisions and textbooks as reasonable. (See as bearing on this question, *Jackson* v. *Neff,* 64 Fla. 326 (60 South. 350); *State* v. *Swagerty,* 203 Mo. 517 (102 S. W. 483, 12 Am. St. Rep. 671, 10 Ann. Cas. 725, 10 L. R. A. (N. S.) 601); *State* v. *Finch,* 78 Minn. 118 (80 N. W. 856, 46 L. R. A. 437); Babbitt on Motor Vehicles (2 ed.), § 177; McQuillin on Mun. Ordinances, § 424.)"

To the effect that classification based on horse-power is proper, see *Hendrick* v. *Maryland,* 235 U. S. 622 (59 L. Ed. 385, 35 Sup. Ct. Rep. 142). Likewise, see *Lillard* v. *Melton,* 103 S. C. 10 (87 S. E. 421); *Heartt* v. *Downer's Grove,* 278 Ill. 92 (115 N. E. 869); *Smith* v. *Commonwealth,* 175 Ky. 286 (194 S. W. 367); also case of *Kane* v. *New Jersey,* 242 U. S. 160 (61 L. Ed. 222, 37 Sup. Ct. Rep. 30), where the court, speaking through Mr. Justice BRANDEIS, said:

"The power of a state to regulate the use of motor vehicles on its highways has been recently considered by this court and broadly sustained. * * It includes the right to exact reasonable compensation for special facilities afforded, as well as reasonable provisions to insure safety. And it is properly exercised in imposing a license fee graduated according to the horse-

power of the engine: *Hendrick* v. *Maryland,* 235 U. S. 610 (59 L. Ed. 385, 35 Sup. Ct. Rep. 140)."

It was held in *Jasnowski* v. *Board of Assessors,* 191 Mich. 287 (157 N. W. 891), that:

"What classes of property shall be taxed and what shall be exempted except as restricted by the constitution is a question that rests within the discretion of the legislature. It is within legislative authority to exempt from other forms of taxation, property which pays a specific tax, whether or not the tax is levied on the property itself or on the right to use it in a certain way."

In *Rast* v. *Van Deman & Lewis,* 240 U. S. 357 (60 L. Ed. 679, Ann. Cas. 1917B, 455, L. R. A. 1917A, 421, 36 Sup. Ct. Rep. 374), speaking through Mr. Justice McKENNA, the court said:

"It is established that a distinction in legislation is not arbitrary, if any state of facts reasonably can be conceived that would sustain it, and the existence of that state of facts at the time the law was enacted must be assumed: *Lindsley* v. *Natural Carbonic Gas Co.,* 220 U. S. 61, 78 (55 L. Ed. 369, Ann. Cas. 1912C, 160, 31 Sup. Ct. Rep. 337). It makes no difference that the facts may be disputed or their effect opposed by argument and opinion of serious strength. It is not within the competency of the courts to arbitrate in such contrariety: *Chicago, B. & Q. R. R.* v. *McGuire,* 219 U. S. 549 (55 L. Ed. 328, 31 Sup. Ct. Rep. 259); *German Alliance Ins. Co.* v. *Kansas,* 233 U. S. 389, 413, 414 (58 L. Ed. 1011, 1022, L. R. A. 1915C, 1189, 34 Sup. Ct. Rep. 612); *Price* v. *Illinois,* 238 U. S. 446, 452 (59 L. Ed. 1400, 1405, 35 Sup. Ct. Rep. 892).

"It is the duty and function of the legislature to discern and correct evils, and by evils we do not mean some definite injury but obstacles to a greater public welfare: *Eubank* v. *Richmond,* 226 U. S. 137, 142 (57 L. Ed. 156, Ann. Cas. 1914B, 192, 42 L. R. A. (N. S.) 1123, 33 Sup. Ct. Rep. 76); *Sligh* v. *Kirkwood,* 237 U. S. 52, 59 (59 L. Ed. 835, 837, 35 Sup. Ct. Rep. 501).

And, .we repeat, 'It may make discriminations if founded on distinctions that we cannot pronounce unreasonable and purely arbitrary': *Quong Wing* v. *Kirkendall,* 223 U. S. 59, 62 (56 L. Ed. 350, 32 Sup. Ct. Rep. 192), and cases cited above.''

The existence of the necessity for requiring a privilege tax for the operation of the vehicles described in the Oregon Motor Vehicle Law upon the highways of the State of Oregon, and the authority to say what constitutes a reasonable tax for such privilege, is for the determination of the law-making power of the state. We cannot say that the license fee exacted for the privilege of operating motor vehicles upon the highways of this state is unreasonable. It is common knowledge that 103,790 vehicles have been registered under the provisions of the motor vehicle law of this state for the year just closed. They are driven over the highways of Oregon and their operations have caused immense damage to the roads of the state. Millions of dollars have been expended by this state and millions more will be expended in the future, for the construction and maintenance of highways, chiefly for the operation of motor vehicles. In this modern age the highways are chiefly used by the automobile, and it should pay, in a large measure, for their construction and destruction.

''The imposition is a license or privilege tax charged in the nature of compensation for the damage done to the roads * * by the driving of these machines over them, and is properly based, not upon the value of the machine, but upon the amount of destruction caused by it'': *Kane* v. *State,* 81 N. J. Law, 594 (80 Atl. 543, Ann. Cas. 1912D, 237, L. R. A. 1917B, 553); *In re Kessler,* 26 Idaho, 764 (146 Pac. 113, Ann. Cas. 1917A, 228, L. R. A. 1915D, 322).

A valuable case is *Ard* v. *People,* 66 Colo. 480 (182 Pac. 893), citing *Atkins* v. *State Highway Department*

(Tex. Civ. App. 1918), 201 S. W. 226; *Ex parte Hoffert,* 34 S. D. 271 (148 N. W. 20, 52 L. R. A. (N. S.) 949; *In re Kessler,* 26 Idaho, 764 (146 Pac. 113, Ann. Cas. 1917A, 228, L. R. A. 1915D, 322); *State* v. *Lawrence,* 108 Miss. 291 (66 South. 745, Ann. Cas. 1917E, 322); *Kane* v. *State,* 81 N. J. Law, 594 (80 Atl. 453, Ann. Cas. 1912D, 237, L. R. A. 1917B, 553); Berry on Automobiles, § 91; likewise, the case of *State* v. *Collins,* 94 Wash. 312 (162 Pac. 556), and authorities there cited; *State ex rel. Fargo* v. *Wetz,* 40 N. D. 299 (168 N. W. 835, 5 A. L. R. 731, and valuable note).

For failure to admit the testimony hereinbefore referred to, this case is reversed and remanded.

REVERSED AND REMANDED.  REHEARING DENIED.

BENSON and JOHNS, JJ., concur.

BEAN, J., concurs in the result.