[L. A. No. 7196. In Bank.—August 5, 1924.]

## H. M. PARKE et al., Appellants, v. F. G. FRANCISCUS, Respondent.

[1] MOTOR VEHICLE ACT — REGISTRATION OF VEHICLES — TRANSFERS — TITLE OF ACT — CONSTITUTIONAL LAW. — The provision of section 24 of article IV of the constitution that "every act shall embrace but one subject, which subject shall be expressed in its title," is not violated by the title to the Motor Vehicle Act of 1919, which provides that it is to amend the 1915 act, "said amendments to provide for the regulation of the use and occupation of the public highways by vehicles and otherwise . . . for the registration and identification of motor and other vehicles"; and section 8 of the Motor Vehicle Act of 1919, which purports to make a transfer invalid for any purpose unless certain conditions in the act are complied with, is not therefore void as being beyond the declared purpose of the act.

[2] ID. — REGISTRATION AND IDENTIFICATION OF VEHICLES — REASONS FOR.—The nature of motor vehicle traffic requires that there be a more certain *indicia* of ownership than mere possession for the protection of the general public in case of accidents or violations of the law and to prevent fraud upon innocent purchasers, and in order to effectuate this purpose registration and identification of motor vehicles is required.

[3] ID.—TRANSFERS OF VEHICLE — REGISTRATION — TITLE — POWER OF LEGISLATURE.—It cannot be said to be beyond the power of the legislature to require the registration of a motor vehicle and, in case of transfer, indorsement of the certificate of registration by the transferor and transferee, as an essential to complete title in the motor vehicle, when the enforcement of the police regulations contained in the Motor Vehicle Act and the revenue measures therein is dependent upon the fact of title and ownership.

[4] ID.—FAILURE OF TRANSFEREE TO PROCURE REGISTRATION CERTIFICATE—EFFECT UPON SALE.—The failure of the transferee of the

---

1. Title of statute as embracing but one subject, note, 79 **Am. St. Rep.** 456. See, also, 3 **Cal. Jur.** 786; 25 **R. C. L.** 841.

"ownership" in the car to procure the registration certificate properly indorsed, as required by section 8 of the Motor Vehicle Act of 1919, does not make the sale void *ab initio*, but in the terms of the statute it is incomplete.

[5] ID.—CERTIFICATE OF REGISTRATION—WHEN TITLE TO CAR IS COMPLETE.—The certificate of registration under the Motor Vehicle Act of 1919, which serves the purpose of the certificate of ownership and the certificate of registration provided for in the act of 1923, must have been properly indorsed upon the reverse side thereof by the transferees of the "ownership" or title or interest in the car, filed with the motor vehicle department, and a new certificate of registration issued in the name of the transferees before title was completely vested in them and before the transfer to them could be effective or valid for any purpose.

[6] ID. — TRANSFER OF CAR BY "DEALER" — FAILURE TO MAKE STATEMENT—EFFECT UPON SALE.—Under the Motor Vehicle Act of 1919, while the requirement of a statement of transfer of a car by a "dealer" is mandatory, a failure to comply therewith does not make the sale incomplete or invalid.

[7] ID.—SALE OF CAR—FAILURE OF TRANSFEREES TO OBTAIN CERTIFICATE—TITLE.—Where the assignees of the conditional vendor, by virtue of a transfer to them of a conditional sale contract of an automobile, are the transferees of the "ownership" of the automobile within the meaning of section 8 of the Motor Vehicle Act of 1919, the failure of the transferees to obtain the certificate of registration properly indorsed by themselves and the assignor and to forward it together with an application for reregistration to the motor vehicle department within ten days renders their title invalid as against a party purchasing the car from the conditional vendee.

[8] ID.—CLAIM AND DELIVERY—TITLE—POSSESSION.—In an action of claim and delivery the claimant is not called upon to establish ownership, merely a right to the possession of the thing; and since the transfer of the automobile to plaintiffs, who did not comply with the law relating to registration, was not void *ab initio*, in an action of claim and delivery they might be entitled to recover.

[9] ESTOPPEL—QUESTION OF FACT.—The existence of an estoppel is a question of fact.

[10] ID.—FRAUDULENT INTENT.—One of the four essential elements of estoppel is fraudulent intent, that is, there must be circumstances and conduct which would render it a fraud for the party

8.  See 5 Cal. Jur. 160; 23 R. C. L. 864.
10.  See 10 Cal. Jur. 626, 633; 10 R. C. L. 691.

to deny what he had previously induced or suffered another to believe and take action upon.

[11] ID.—NEGLIGENCE—INTENT TO DECEIVE.—Negligence, that is, careless and culpable conduct, is, as matter of law, equivalent to an intent to deceive and will satisfy the element of fraud necessary to an estoppel, it being necessary that the neglect, to operate as an estoppel, must be in respect to some duty owing to the party asserting it.

[12] MOTOR VEHICLE ACT—ASSIGNMENT BY CONDITIONAL VENDOR OF AUTOMOBILE—POSSESSION OF REGISTRATION CERTIFICATE BY VENDOR AND VENDEE — INNOCENT PURCHASER — ESTOPPEL. — The assignees of a conditional vendor of an automobile, by allowing the conditional vendor and vendee to keep the certificate of registration, indorsed alone by the original owner, thus enabling the conditional vendor and vendee to dispose of the property to an innocent purchaser in the belief that he was obtaining valid title thereto, are estopped to deny that such innocent purchaser has obtained such title, the failure of said assignees to perform the requirements imposed by law being such as to constitute culpable negligence upon which an estoppel may be founded.

---

(1) 36 Cyc., pp. 1022, 1031. (2) 28 Cyc., p. 33. (3) 28 Cyc., pp. 33, 44 (1926 Anno.). (4) 28 Cyc., p. 44 (1926 Anno.). (5) 28 Cyc., p. 44 (1926 Anno.). (6) 28 Cyc., p. 44 (1926 Anno.). (7) 28 Cyc., p. 44 (1926 Anno.). (8) 34 Cyc., p. 1388. (9) 21 C. J., p. 1253, sec. 270. (10) 21 C. J., p. 1204, sec. 205. (11) 21 C. J., p. 1218, sec. 222 (1926 Anno.). (12) 21 C. J., p. 1219, sec. 223.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles Wellborn, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. W. Hindman for Appellants.

Woodruff & Shoemaker for Respondent.

LAWLOR, J.—This is an action in claim and delivery for the possession of one Buick automobile, motor No. 179804.

In April, 1920, Robert J. McNabb purchased and received possession of the Buick automobile from John Waterfield.

---

11. See 10 Cal. Jur. 634; 10 R. C. L. 694.

A bill of sale was executed by Waterfield and with a registration certificate required by the Motor Vehicle Act (Stats. 1919, p. 191) was delivered to McNabb, who drew a draft in favor of Waterfield on the Coast Securities Company for the amount of the purchase price of the automobile. On May 10, 1920, McNabb sold this same automobile to J. D. Green, his employee, upon a conditional sale contract for $1,050. No money was paid down, but an offset of $350 was allowed Green in consideration of the cancellation of an indebtedness of that amount due him from McNabb. A registration certificate was not delivered to Green. Possession of the automobile was delivered to him and he agreed to pay the balance of $700 in monthly installments of $58 each. The contract was in writing and provided that: "The title to the said property, and parts and accessories added thereto, shall be and remain in the first party until all of said payments are made, and all of the conditions herein contained fully complied with. . . . But it is expressly agreed that this contract is a conditional contract of sale and does not tranfer to the party of the second part any right or title in or to said automobile until the full performance of all payments and conditions named herein by the party of the second part. . . . This agreement shall inure to the benefit of and be binding upon the heirs, executors, administrators and successors of the respective parties hereto, and the assigns of said first party." It was also provided that upon any default in payment of any installment when due the conditional vendor might at his option, without previous demand or notice, retake possession of the machine with or without process of law. Parke and Browne, plaintiffs, through an independent broker, L. L. Baxter, purchased this contract from McNabb on May 11, 1920, for $644.15. No bill of sale was delivered to Parke and Browne nor was the registration certificate indorsed over or delivered to them. Green filled out a blank attached to the conditional sale contract, giving his name, address, and two references, and reciting that the automobile was to be used by him privately and for business; also stating that it would be stored at 26 Virginia Street, the address of McNabb's place of business in Lamanda Park, Los Angeles. Parke and Browne wrote Green that they had purchased said contract from McNabb; that all payments should thereafter be made directly to their

office, advising him that within a short time before each payment became due he would be given notice thereof; that the car had been insured against fire and theft, and that they would like to insure him against collision. The notices were sent to Green for the installments due on the tenth days of June, July and August. On July 8th and August 20th, respectively, Parke and Browne received the stipulated installments of principal and interest. Green testified that he kept the car at McNabb's place of business and used it for demonstration purposes and occasionally when he went home to lunch.

About May 20, 1920, Green sold the car to defendant, F. G. Franciscus. The price was $1,000. Five hundred and fifty dollars of the purchase price was paid by check and a Ford automobile was "turned in at $450." A bill of sale was not given to Franciscus. He took possession of the car and retained it until the commencement of this action, November 19, 1920. Franciscus asked both Green and McNabb for the registration certificate, but he was not permitted to testify as to what response was made. However, L. D. Nolan, another salesman for McNabb, sent it to the motor vehicle department, together with an application blank for re-registration and one dollar in payment for such transfer. The certificate was indorsed at the time on the reverse side by Franciscus. Green testified that he cashed the $550 check he received from Franciscus and delivered the money to McNabb and that he never took possession of the Ford automobile. About three weeks after the delivery of the Buick to Franciscus he received by mail the new certificate of registration.

Parke and Browne instituted these proceedings in claim and delivery against Franciscus, alleging that they were the owners and entitled to immediate and exclusive possession of the automobile in question; that Franciscus had without their consent come into possession of the automobile unlawfully; that they made demand for possession of the car, but that Franciscus refused to deliver it to them, and still unlawfully withholds possession thereof. A supplemental complaint was filed by Parke and Browne alleging that since the commencement of said action Franciscus had executed a redelivery bond and taken possession of the car. Franciscus, in his answer, denied these allegations of the complaint and

further alleged that prior to May 20, 1920, Green and McNabb were in possession of said automobile with the right to dispose thereof, and that Franciscus was a buyer in good faith for value in the ordinary course of business, without notice of ownership or any claim of Parke and Browne; that he was the owner and entitled to possession of the machine and that if Parke and Browne ever had any right or title in the car they conferred upon McNabb and Green apparent title and power to sell, and are now estopped from asserting any title to or right of possession in it as against Franciscus; that he was an innocent third party and purchaser for value who dealt with the apparent owner without knowledge of any alleged claim on the part of Parke and Browne and that they negligently allowed the sale to be made to him.

The case was tried by the court sitting without a jury and judgment went for defendant. Parke and Browne appeal from the judgment. The court found that Parke and Browne were not, and that they had not been, the owners or entitled to possession of the automobile in controversy, and that Franciscus was the owner and entitled to possession thereof. The findings continue: ''That on and prior to the 20th day of May, 1920, one Robert J. McNabb and Jack Green were in possession of the said automobile at their place of business as used car dealers at Lamanda Park, Los Angeles County, California; that at said time and place the said Robert J. McNabb was the owner of and conducting said business and the said Jack Green was employed by said Robert J. McNabb as a salesman in selling and disposing of second hand or used automobiles; that at said time and place the said Robert J. McNabb and Jack Green were possessed of the power to dispose of the automobile above described; and that the defendant bought the said automobile on the 20th day of May, 1920, at said place ·. . . in the ordinary course of business.'' It is further found that Parke and Browne neglected to take any precautions in having the automobile registered in their name or in showing any transfer of record in their favor, and that they negligently permitted the certificate of registration, indorsed in blank by McNabb and Green, to be where it was available to inspection by innocent purchasers, and that they carelessly put it in the power of McNabb and Green to dispose

194 Cal.—19

of said automobile to an innocent purchaser in the belief that he obtained valid title thereto.

The first question presented is whether the failure to comply with the requirements of section 8 of the Motor Vehicle Act (Stats. 1919, p. 191), as to the transfer of ownership in motor vehicles which are registered under the act precludes the passage of the title to such vehicle. The said provision of the Motor Vehicle Act reads as follows: "Until said transferee has received said certificate of registration and has written his name upon the face thereof in the blank space provided for said purpose by the department, delivery of said motor vehicle shall be deemed not to have been made and title thereto shall be deemed not to have passed and said intended tranfer shall be deemed to be incomplete and not to be valid or effective for any purpose; *provided,* that where such transfer is made to a manufacturer or dealer to whom has been assigned a general distinguishing number and who intends to resell or otherwise retransfer said vehicle the provisions of this act relative to the joint statement of transferor and transferee indorsed thereon, shall be complied with upon such sale or transfer." (Sec. 8.)

Appellants contend that this requirement of the statute creates merely a duty of owners and operators of motor vehicles toward the state; that registration under the act is not proof of ownership, but simply *prima facie* a claim of right or representation which a person in actual physical possession cannot successfully assert to divest the legal title of rightful owners of personal property. In support of their position appellants mention other provisions of section 8 such as that "The department shall also furnish with each number plate for motorcycles and with each pair of number plates for automobiles, and on each annual renewal of registration, a certificate of registration which shall contain upon the face thereof the following data: The name of the registered owner of the motor vehicle, his post office address, the name and address of the legal owner, and the make of the vehicle, the year model denoted by the manufacturer, the model or letter denoted by the manufacturer, if any; . . . provided, however, the name and address of the legal owner shall appear on the bottom line of the certificate of registration. . . . Such certificate shall contain a blank space for the signature of the registered owner and shall be signed by such owner. The reverse side of said certificate shall con-

tain forms (a) for notice . . . of transfer of ownership, as hereinafter required, and (b) for application to the department by the transferee, in case of transfer of said motor vehicle, for registration thereof in his name, said application to be in the form of a joint statement to be signed by both transferor and transferee, and the legal owner, and to contain in addition to such other particulars as may be required by said department, a statement of the post office address of the transferee so applying for registration.'' It is argued from this that the legislature was not concerned with the transfer of legal title; that the term ''registered owner'' has reference to the person registering the vehicle, and that ''transferee'' is the designation used only by such party, but that the ''legal owner'' takes no part in the transfer until asked to sign the certificate, permitting transfer by the registered owner.

Respondent contends that since the court found it was not true that appellants were or had been the owners of the vehicle in question, they are concluded, and that in any event respondent is protected as an innocent purchaser from Green who had possession and control of the property as against previous transfers which are pronounced fraudulent by section 3440 of the Civil Code. Appellants insist that any attempt by the legislature to curtail the powers of purchase and sale of personal property would be unconstitutional and that this was not the intention of the Motor Vehicle Act, since the registration of vehicles is not required unless they are to be operated on public highways. Furthermore, it is pointed out that the title of the act does not purport to affect rights in personal property, that it aims only to regulate the operation of the motor vehicles and to provide a revenue.

[1] The title to the act of 1919 provides that it is to amend the 1915 act, ''said amendments to provide for the regulation of the use and occupation of the public highways by vehicles and otherwise . . . for the registration and identification of motor and other vehicles . . . '' There is no doubt that the constitutional provision (art. IV, sec. 24) that ''every act shall embrace but one subject, which subject shall be expressed in its title'' is not violated and section 8 of the Motor Vehicle Act, which purports to make a transfer invalid for any purpose unless certain conditions in the

act are complied with, is not therefore void as being beyond
the declared purpose of the act. **[2]** The nature of motor
vehicle traffic requires that there be a more certain *indicia*
of ownership than mere possession for the protection of
the general public in case of accidents or violations of the
law and to prevent fraud upon innocent purchasers. In
order to effectuate this purpose registration and identifica-
tion of motor vehicles is required. The "legal owner"
and the "registered owner" upon the face of the certificate
identify the vehicle. Upon the sale and transfer of "owner-
ship" in a vehicle already registered the act requires the
transferor and transferee to enter into a joint statement
of the transfer indorsed upon the reverse side of the certifi-
cate of registration. It is also provided that the legal
owner sign such statement which shall be forwarded to
the department and upon the payment of a fee the vehicle
shall be registered in the name of the transferee. This
provision is evidently for the purpose of identifying the
vehicle in the hands of transferees. The state is concerned
in the identity and ownership of cars operated upon the
public highways. **[3]** It cannot be said to be beyond the
power of the legislature to require such registration and
indorsement as essentials to complete title in a motor
vehicle, when the enforcement of the police regulations
and revenue measures contained in the act is dependent
upon the fact of title and ownership. We quote from
Huddy on Automobiles, fifth edition, 113: "The reason
assigned for the necessity of registration and licensing is
that the vehicle should be readily identified in order to
debar operators from violating the law and the rights of
others, and to enforce the laws regulating the speed, and to
hold the operator responsible in cases of accident. The
legislatures have deemed that the best method of identifica-
tion, both as to the vehicle and the owner or operator, is
by a number on a tag conspicuously attached to the vehicle.
In case of any violation of law this furnishes means of
identification, for, from the number, the name of the owner
may be readily ascertained and through him the operator.
Such acts are not passed merely for the purpose of revenue
but have for their object the protection of the public."

The provision in question declares that until the transferee
of the "ownership" in the car has received the original

certificate of registration and has written his name upon the face thereof in the blank space provided for that purpose by the department the delivery of said motor vehicle shall be deemed not to have been made and title not to have passed and said intended transfer shall be deemed to be incomplete and not to be valid or effective *for any purpose.* The provision does not make compliance therewith *prima facie* evidence of the ownership of the property in a car so registered and transferred, that is, .the certificate of registration does not so declare in terms. However, the words of the act are clear, plain, and unambiguous and the meaning is not open to question. [4] The failure of the transferee of the "ownership" in the car to procure the registration certificate properly indorsed does not make the sale void *ab initio,* but in the terms of the statute it is incomplete. This interpretation of the intent of the legislature would seem to find support in the Motor Vehicle Act of 1923 (Stats. 1923, p. 517). This act provides for both a certificate of ownership *and* a certificate of registration. It is declared that both shall contain upon the face thereof the date issued, the registration number assigned to the owner and to the vehicle, the name and address of the owner and legal owner in typewriting, and the description of the vehicle. The reverse side of the certificate of ownership *only* shall contain forms for notice to the division of a transfer of the title or interest of the owner or legal owner and application for registration by the transferee. Section 45 of the act provides for the transfer of title or interest in the vehicle: " (a) Upon a transfer of the title or interest of a legal owner or owners in or to a vehicle registered under the provisions of this act as hereinbefore required, the person or persons whose title or interest is to be transferred and the transferee shall write their signatures with pen and ink upon the certificate of ownership issued for such vehicle, together with the address of the transferee, in the appropriate spaces provided upon the reverse of said certificate. (b) Within ten days thereafter, the transferee shall forward both the certificate of ownership so indorsed and the certificate of registration to the division, which shall file the same upon receipt thereof." It is declared in subdivision (c) that the provisions of (b) shall not apply to a transferee who does not intend to drive the vehicle upon

the public highways, "but every such transferee shall upon transferring his interest or title to another give notice of such transfer to the division and indorse the certificate of ownership as herein provided and deliver the certificate of ownership to the new legal owner and the certificate of registration to the new owner." Subdivision (d) provides for the issuance of the new certificate of ownership and registration, respectively, and subdivision (e) declares that until such certificates are issued "delivery of such vehicle shall be deemed not to have been made and title thereto shall be deemed not to have passed and said intended transfer shall be deemed to be incomplete and not to be valid or effective for any purpose." Subdivision (g) declares that the legal owner may assign his title or interest without the consent of the holder of the certificate of registration, but that the indorsed certificate of ownership must be filed with the division and a new one issued to the legal owner and that the division send a notice of such action to the registered owner. It will be noted that the *only* change made in the act of 1923 is to require separate certificates of registration and ownership. By the act of 1919 the certificate of registration contained all the information required in the two certificates by the act of 1923 and served the purposes of both. This was done apparently to facilitate transfers of title or interest which, in cases where the legal owner and the registered owner are not identical, do not affect the registered owner. It is clear that the term "transfer of ownership" in the 1919 act means the same thing as transfer of title or interest in the 1923 act. **[5]** In the case at bar it is clear that the certificate of registration, which serves the purpose of the certificate of ownership and the certificate of registration provided for in the act of 1923, must have been properly indorsed upon the reverse side thereof by the transferees of the "ownership" or title or interest in the car, filed with the motor vehicle department and a new certificate of registration issued in the name of appellants before title was completely vested in them and before the transfer could be effective or valid for any purpose.

When McNabb purchased the automobile in question from Waterfield he received possession thereof and obtained the registration certificate. He did not apply for the re-registration of the vehicle. It was not required by the proviso in section 8 of the act of 1919 that he do so, but he was

required to join with Waterfield in a statement of the transfer upon the reverse side of the certificate of registration. **[6]** While the requirement of such a statement by a "dealer" is mandatory, a failure to comply therewith does not make the sale incomplete or invalid. So far as the certified copy of the original certificate of registration issued to Waterfield shows, the "ownership" or title and interest in the automobile appears to have passed to respondent directly from Waterfield, the original legal and registered owner. Green, the vendee under the conditional sale contract, did not acquire ownership, that is to say, title to the car, therefore he was not required to make application for re-registration in his own name. McNabb still retained the ownership of the car, that is, the legal title which he transferred to appellants by the assignment of the conditional sale contract. **[7]** Appellants are the transferees of the "ownership" of the automobile within the meaning of the third paragraph of section 8. Therefore, the failure of appellants to obtain the certificate of registration properly indorsed by themselves and McNabb and to forward it together with an application for re-registration to the department within ten days renders their title invalid as against the respondent.

We have shown in answer to the first proposition that compliance with section 8 is essential to the transfer of title. This leads to a second proposition—whether in this action of claim and delivery appellants have shown a right of possession in spite of their failure to comply with the requirements of the above section.

**[8]** In an action of claim and delivery the claimant is not called upon to establish ownership, merely a right to the possession of the thing, and since the transfer to appellants was not void *ab initio,* in an action of claim and delivery, they might be entitled to recover. An Oregon statute of 1919 (sec. 4780, Olson's Oregon Laws, 1920) provides that no sale or transfer of any motor vehicle registered in accordance with the act shall be valid without compliance with the provisions of the section concerning the report of a sale of a registered vehicle. The authorities in that state hold that the effect of the statute is to attach to every sale a contingent condition subsequent under which the sale may become abortive on failure to comply with the statutory requirement with reference to registration. (*Swank* v. *Moisan,*

85 Or. 662 [166 Pac. 962].) In *Briedwell* v. *Henderson,* 99 Or. 506 [195 Pac. 575], the court said: "The court properly held that plaintiffs were bound by the terms of the statute, in this: that the sale of the vehicle was invalid. Nevertheless, they had such a special interest in the car that the law authorizes them to maintain an action for its possession. The vehicle was not cast out from the protection of the law by reason of the plaintiffs' failure to observe the statute. The car was property when it was sold; property when the action was instituted; it is property now. Although plaintiffs' title became defective, they came into possession of the car by lawful means. In acquiring its possession, they committed no act of omission or commission that suggests crime or wrong. In an action of claim and delivery under an allegation of general ownership, the plaintiff may prove a special property entitling him to possession." In *Wiedeman* v. *Campbell,* 108 Or. 55 [215 Pac. 885], it was held that the failure to comply with the statute in that state does not bar the purchaser of an automobile from recovering possession of the automobile after default on a conditional sale contract with a third party. The Oregon statute does not declare the sale shall be invalid *for any purpose,* which are the words in the provision here involved. There is no authority in this jurisdiction on the point whether a claimant in an action for claim and delivery must show compliance with the provisions of the Motor Vehicle Act. The cases in which the section is involved assume that the effect of the provision is to preclude the passage of title, but refuse to allow it to be invoked where the facts justify the application of estoppel. (*Boles* v. *Stiles,* 188 Cal. 304 [204 Pac. 848]; *Chucovich* v. *San Francisco Securities Corp.,* 60 Cal. App. 700 [214 Pac. 263].) In the former case the court held that although one of the partners of a dissolved partnership failed to obtain a new registration certificate in his own name, the original certificate having been in the partnership name, he had shown sufficient property, coupled with a right to the immediate possession, to enable him to maintain an action for the recovery of the possession of the automobile from the other partner who had unlawfully obtained possession thereof. It was said: "The appellant by his own act and agreement having placed the plaintiff in the immediate and exclusive possession of the

automobile is not in position to invoke the provision of the statute referred to.'' In the latter case a conditional sale contract was assigned to the securities corporation and the conditional vendee having defaulted, the conditional vendor under instructions of the securities corporation repossessed itself of the truck and sold it to an innocent purchaser. The decision was put upon the ground that the assignee of the conditional sale contract was estopped to deny the authority of the conditional vendor to convey a valid title to an innocent purchaser. An argument was made, however, that the innocent purchaser had not received title because he had not complied with the provisions of the Motor Vehicle Act. The court held that the assignee of 'the conditional sale contract was in no position to raise such a question, having by his own act placed the automobile in the possession of the conditional vendor. Under the authorities in this jurisdiction and elsewhere it would seem that the appellants have shown sufficient property in the automobile to prevail in an action of claim and delivery where the rights of innocent third persons are not involved.

This brings us to a consideration of the rights of respondent. The trial court based its judgment on the issue raised by the defense set up by respondent, that is, that he had acquired title by estoppel. [9] The existence of an estoppel is a question of fact (*Di Nola* v. *Allison,* 143 Cal. 106 [101 Am. St. Rep. 84, 65 L. R. A. 419, 76 Pac. 976]). And assuming that the trial court followed the correct rule of law, the next question is whether the evidence establishes all the elements of estoppel. [10] One of the four essential elements of estoppel is fraudulent intent, that is, there must be circumstances and conduct which would render it a fraud for the party to deny what he had previously induced or suffered another to believe and take action upon. (10 Cal. Jur. 634.) [11] It is well settled that negligence, that is, careless and culpable conduct, is as matter of law equivalent to an intent to deceive and will satisfy the element of fraud necessary to an estoppel. (*Venice* v. *Short Line Land Co.,* 180 Cal. 447 [181 Pac. 658].) Of course, the neglect, to operate as an estoppel, must be in respect to some duty owing to the party asserting it. [12] The question is whether the appellants, by allowing the conditional vendor and vendee to keep the certificate of registration, indorsed

alone by the original owner, thus enabling them to dispose of the property to an innocent purchaser in the belief that he was obtaining valid title thereto, are estopped to deny that such innocent purchaser has obtained such title. This is such a failure to perform the requirements imposed by law as to constitute culpable negligence upon which an estoppel may be founded. It follows that as the registration certificate is a prerequisite to the passing of title, and that appellants failed to obtain such certificate and negligently allowed it to remain outstanding, they cannot recover possession of the automobile in an action of claim and delivery, since respondent as an innocent purchaser acquired lawful possession thereof. We are not, however, passing on the relative rights of appellants or of McNabb and Green in the automobile.

Judgment affirmed.

Richards, J., Myers, C. J., Seawell, J., Waste, J., and Lennon, J., concurred.