SKID EVANS, Inc., v. PATTEN, Sheriff.

No. 5009.  Decided July 31, 1931.  (1 Pac. [2d] 959.)

*Ben E. Roberts* and *Dan B. Shields,* both of Salt Lake City, for appellant.

*P. C. Evans,* of Salt Lake City, for respondent.

ELIAS HANSEN, J.

In this action plaintiff seeks to recover a judgment against the defendant for damages claimed to have been sustained by it because of the alleged wrongful release of the possession of, and the failure to sell, two automobile coaches which the defendant, as sheriff of Salt Lake County, Utah, had theretofore levied upon pursuant to an execution issued out of the city court of Salt Lake City, Utah, in an action wherein the plaintiff herein secured a judgment against the Great Western Motorways, Inc. In the court below, a judgment was rendered against the defendant and in favor of the plaintiff for $447.75, the amount owing on the judgment which the plaintiff held against the Great Western Motorways, Inc. The defendant appeals.

There is no substantial conflict in the evidence. The facts disclosed by the record which is brought here for review, so far as material, are as follows: Under date of June 23, 1928, the Great Western Motorways, Inc., entered into a written conditional sales contract with the Fageol Motors Company of Oakland, Cal., for the purchase and sale of ten 6-cylinder Fageol Safety Coaches. The agreed purchase price was $112,-197.73. Of this amount, $38,794.67 was paid when the contract was entered into, and an additional $1,403.06 was paid when the coaches were delivered. The contract provides for the payment of the $72,000 remaining unpaid in monthly installments of $4,000 each. The title to the coaches was by the terms of the contract retained by the Fageol Motors

Company until the full purchase price was paid. The contract also provides that if the buyer fails to perform any of the terms of the contract the seller may at its option repossess the property. Under date of June 28, 1928, the Fageol Motors Company executed a written assignment whereby it sold, assigned, and transferred all of its rights and remedies in the conditional sales contract to the C. I. T. Corporation of San Francisco, Cal. The assignment recites that the conditional sales contract is sold to the C. I. T. Corporation in accordance with the terms of a contract between the Fageol Motors Company and the C. I. T. Corporation dated March 16, 1925.

The automobile coaches were delivered to the Great Western Motorways and were used by it for the transportation of passengers between Utah and California. Each of the coaches carried a Utah license number and a sign with the words "Great Western Motorways." There was also a red feather design on each coach. Under date of November 7, 1928, a judgment was rendered in the city court of Salt Lake City, Utah, in favor of the plaintiff herein, and against the Great Western Motorways, for the sum of $427.25 for automobile tires which Skid Evans, Inc., sold and delivered to the Great Western Motorways during the month of August, 1928. On November 22, 1928, an execution was issued by the clerk of the city court in the case of *Skid Evans, Inc.* v. *Great Western Motorways, Inc.*, and delivered to the defendant in this action, and on January 8, 1929, he levied upon the two automobile coaches which form the subject-matter of this action. The defendant advertised the coaches for sale; the time fixed in the notice of sheriff's sale being January 17, 1929. On January 10, 1929, the C. I. T. Corporation, by G. B. Boyack, its agent, made an affidavit wherein he, in substance, avers that on or about June 23, 1928, the Fageol Motors Company of Oakland, Cal., entered into a contract with the Great Western Motorways, Inc., for the sale and purchase of ten busses; that by virtue of such agreement the ownership and title to the busses and each of them

should remain in the Fageol Motors Company until the entire purchase price was paid; that on July 10, 1928, the Fageol Motors Company assigned, set over, and transferred to the C. I. T. Corporation all of its right, title, and interest in the contract; that there is still due and owing upon said contract the sum of $60,000 together with interest, and that the C. I. T. Corporation is the legal owner of the busses and each of them; that the two busses attached by the sheriff and which are about to be sold at sheriff's sale were busses sold and delivered under the contract between the Fageol Motors Company, Inc., and the Great Western Motorways, Inc. The affidavit asked that the attachment of the two busses be dissolved, and that the C. I. T. Corporation be declared to be the owner thereof. One copy of the affidavit was served upon the defendant herein, another copy was served upon the attorney of record for Skid Evans, Inc., in the case of *Skid Evans, Inc.* v. *Great Western Motorways, Inc.*, and the original affidavit was filed in the city court in the case of *Skid Evans, Inc.* v. *Great Western Motorways, Inc.*

The evidence shows without conflict that the allegations of the affidavit are true. Upon the C. I. T. Corporation executing a bond to indemnify the sheriff for any loss that he might sustain by reason of releasing the automobile coaches, they were released and delivered to the C. I. T. Corporation.

The evidence further shows that both of the coaches involved in this action were registered in the office of the secretary of state of the state of Utah. One was registered in the name of the Great Western Motorways, Inc., as registered owner, and the Fageol Motors Company of Oakland, Cal., as legal owner. The other coach was registered in the name of the Great Western Motorways, Inc., as registered owner, and the place on the registration card for the name of the legal owner was left blank. Upon the registration card used by the secretary of state for the registration of automobiles is a printed statement that "Secretary of State

will assume applicant is legal owner where legal owner's name is omitted on application." The Great Western Motorways, Inc., by L. L. Robinson made both of the applications for automobile licenses. It is further made to appear that at the time the two automobile busses were levied upon by the sheriff of Salt Lake county the Great Western Motorways, Inc., was in default in the payments of a number of its installments, and that negotiations were being had for an extension of the time of paying such installments.

Leo N. Evans, president of the plaintiff corporation, testified that when he sold the automobile tires to the Great Western Motorways, Inc., he believed and relied upon the belief that that corporation was the owner of the coaches used by it, and that such belief was based upon the fact that the coaches carried a sign "Great Western Motorways, Inc."

Respondent, in its brief, contends that as the C. I. T. Corporation is not a party to this action, the ownership and title to the automobile coaches is not an issue. We do not so construe the pleadings. The plaintiff, in its complaint, alleges that the coaches which were levied upon by the defendant belonged to the Great Western Motorways, Inc. The defendant in his answer denied that allegation. Thus, an issue was joined, and the issue so joined was a material issue. Before the plaintiff can be said to have suffered any damages because the defendant released the coaches and delivered them to the C. I. T. Corporation, it must be made to appear that the Great Western Motorways was the owner of the coaches, or that it had some interest therein which was subject to be levied upon and sold under execution. There cannot well be any question but that if the sheriff wrongfully levied upon the property of the C. I. T. Corporation for the purpose of satisfying plaintiff's claim against the Great Western Motorways, the plaintiff was not damaged because the sheriff refused to sell the property but delivered it to the rightful owner. Before the plaintiff was entitled to succeed in this action, it was necessary for it

to show that the Great Western Motorways had some interest in the coaches subject to levy, and to meet that claim the defendant was entitled to show that the ownership and title was in the C. I. T. Corporation.

Respondent next urges that the defendant was not authorized to release the property which it levied upon merely because the C. I. T. Corporation made claim thereto and furnished an indemnity bond for the protection of the defendant. It is urged that the defendant should have required a bond from the plaintiff before releasing the coaches, and that not until such request was made of and refused by the plaintiff was the defendant justified in releasing the automobiles. In support of such contention, our attention is called to the provisions of Comp. Laws Utah 1917, §§ 1512, 1517, 6922, and 6928. The law referred to, will, of course, aid the plaintiff if it was damaged by the release of the coaches, but if, under the facts disclosed by this record, the C. I. T. Corporation was entitled to have the coaches delivered to it, the plaintiff has no just cause to complain because they were so delivered. It has long been the established law in this state that the terms of a conditional sales contract, wherein the ownership and title to property is retained by the seller, will be given effect as between the parties and as to third persons, although the possession of the property is given to the purchaser. Among the cases so holding are the following: *Russell* v. *Harkness*, 4 Utah 197, 7 P. 865, affirmed by the Supreme Court of the United States in 118 U. S. 663, 7 S. Ct. 51, 30 L. Ed. 285; *Hirsch* v. *Steele*, 10 Utah 18, 36 P. 49; *Detroit Heating & Lighting Co.* v. *Stevens*, 16 Utah 177, 52 P. 379; *Lippincott* v. *Rich*, 19 Utah 140, 56 P. 806; *Standard Steam Laundry* v. *Dole*, 22 Utah 311, 61 P. 1103; *Turnbow* v. *Beckstead*, 25 Utah 468, 71 P. 1062; *Freed Furniture & Carpet Co.* v. *Sorensen*, 28 Utah 419, 79 P. 564, 107 Am. St. Rep. 731, 3 Ann. Cas. 634; *Passow et al.* v. *Emery, Sheriff*, 37 Utah 49, 106 P. 935; *Truitt* v. *Patten, Sheriff* (Utah) 287 P. 175. The respondent contends that the general rule applied in the

cases just cited is modified by the law relating to the registration of automobiles with the secretary of state. Our attention is called to the provisions of Laws Utah 1925, c. 125, and particularly to section 3972X, subd. (d) and (e) thereof, wherein it is provided:

"(d) The secretary of state, upon receipt of the certificate of ownership properly endorsed, as required herein, and the certificate of registration of such vehicle, and upon the payment of a fee of $1.00, shall register such vehicle as hereinbefore provided with reference to the original registration, and shall issue to the owner and legal owner entitled thereto by reason of such transfer a new certificate of ownership, respectively, in the manner and form hereinbefore provided for original registration.

"(e) Until the secretary of state shall have issued such new certificate of registration and certificate of ownership, as herein provided in subdivision (d), delivery of such vehicle shall be deemed not to have been made and title thereto shall be deemed not to have passed and said intended transfer shall be deemed to be incomplete and not to be valid or effective for any purpose."

We are unable to conceive wherein the provisions of the statute just quoted can be of any aid to the respondent, even though complete title to the coaches did not vest in the C. I. T. Corporation because of its failure to have the transfer to it made in the office of the secretary of state. Such fact could not convey any additional title to the Great Western Motorways. The only legal effect of the failure of the C. I. T. Corporation to have the transfer made would be to leave the title in the Fageol Motors Company. So far as plaintiff is concerned, it could make no difference whether the legal title was in the C. I. T. Corporation or in the Fageol Motors Company. Ownership by the Fageol Motors Company of the coaches levied upon would be just as effective in defeating plaintiff's right to have them sold to satisfy its judgment against the Great Western Motorways as would ownership by the C. I. T. Corporation. In either event, the only interest that was subject to the payment of plaintiff's judgment was the interest owned by the

Great Western Motorways. The cases of *General Motors Acceptance Corp.* v. *Dallas,* 198 Cal. 365, 245 P. 184; *Parke* v. *Franciscus,* 194 Cal. 284, 228 P. 435; *State ex rel. Conn. Fire Ins. Co.* v. *Cox,* 306 Mo. 537, 268 S. W. 87, 37 A. L. R. 1456; *Muzenich* v. *McCain,* 220 Mo. App. 502, 274 S. W. 888; *Platner* v. *Bourne* (Mo. App.) 275 S. W. 590; *Winne* v. *Ford,* 88 Cal. App. 308, 263 P. 545; *Wiedeman* v. *Campbell,* 108 Or. 55, 215 P. 885; *Briedwell* v. *Henderson,* 99 Or. 506, 195 P. 575, cited by the respondent, do not support any different rule. If the plaintiff in good faith and for value had acquired some interest in the coaches from the Fageol Motors Company and thereafter the C. I. T. Corporation had asserted some claim adverse to the interest so acquired, the provisions of the law relied upon by the plaintiff and the cases cited by it may be of some aid to protect the interest so acquired, but no such facts are present in this case.

It may be urged that only one of the coaches levied upon showed that the Fageol Motors Company was the legal owner thereof; the registration of the other coach did not show who was the legal owner. Laws Utah 1925, c. 125, § 3972X contains these provisions:

"Application for the registration of a vehicle herein required to be registered shall be made upon the appropriate form furnished by the secretary of state, and shall contain the name and address of the owner, and legal owner. * * *

"It shall be the duty of the secretary of state to examine and to the best of his ability to determine the genuineness and regularity of every registration and transfer of registration of a vehicle, as in this Act provided, in order that every certificate issued for a vehicle shall contain true statements of ownership thereof, and to prevent the registration of a vehicle by any person not entitled thereto, and the secretary of state is hereby authorized to require any applicant to furnish such information in addition to that contained in the application, as may be necessary to satisfy such officer, of the truth and regularity of such application."

The provisions of the law just quoted do not authorize the secretary of state to assume that the applicant is the legal

owner merely because the legal owner's name is omitted in the application, but, on the contrary, the law enjoins upon the secretary of state the duty of ascertaining to the best of his ability who is the legal owner. The fact that the secretary of state assumed that the applicant for a license is the legal owner cannot affect the rights of the legal owner. No claim is here made that either the Fageol Motors Company or the C. I. T. Corporation authorized the Great Western Motorways to leave the name of the legal owner out of the application for a license, or that either knew that the name of the legal owner was not in the application for a license. Neither is there any evidence that the plaintiff at any time relied upon the fact that the name of the legal owner was left blank on the application for a license as evidence that the Great Western Motorways was the registered as well as the legal owner of the coaches which were released to the C. I. T. Corporation by the defendant. The only conclusion permissible from the undisputed evidence in this case is that the rights acquired by the plaintiff by the levy on the two coaches involved in this transaction were inferior and subject to the outstanding interests of the Fageol Motors Company and the C. I. T. Corporation. Moreover, the plaintiff was notified of the nature and extent of the superior claims outstanding against the coaches before the same were released from the levy and delivered to the C. I. T. Corporation. If the plaintiff desired to have the coaches sold pursuant to its levy, it was incumbent upon it to pay the balance owing on the purchase price. This it failed to do, and therefore it may not be heard to complain because the defendant refused to sell the coaches. If the defendant had sold the coaches, he would have been liable to the owner for their value in an action for conversion. *Truitt* v. *Patten, Sheriff*, supra.

It follows that the judgment must be, and it accordingly is, reversed. The cause is remanded to the district court of Salt Lake county for such further proceedings, not incon-

sistent with the views expressed herein, as it may deem proper. Appellant is awarded its costs.

CHERRY, C.J., and STRAUP, FOLLAND, and EPHRAIM HANSON, JJ., concur.