Argued and submitted November 21, 1983, affirmed April 11, reconsideration denied June 29, petition for review denied August 8, 1984 (297 Or 547)

## STATE OF OREGON,
*Appellant,*

*v.*

## WAYNE ANTHONY HARRINGTON,
*Respondent.*

### (B63-826; CA A28262)

680 P2d 666

Christine L. Dickey, Assistant Attorney General, Salem, argued the cause for appellant. With her on the briefs were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

William J. Stater, Eugene, argued the cause for respondent. With him on the brief was Stater & Nelson, Eugene.

David M. Raim, Charles C. Platt and LeBoeuf, Lamb, Leiby & MacRae, New York, New York, filed a brief amicus curiae for the Anti-Defamation League of B'nai B'rith.

Rex Armstrong, Portland, filed a brief amicus curiae for American Civil Liberties Union Foundation of Oregon, Inc.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

The state appeals a trial court order sustaining defendant's demurrer to a complaint charging racial intimidation. *Former* ORS 166.155.[1] The intimidation statute enhances the penalty for criminal mischief, ORS 164.345, or harassment, ORS 166.065, when such crimes are motivated by the race, color, religion or national origin of the victim. The complaint in this case alleged "harassment." Defendant challenged both ORS 166.065(1)(b)—the harassment statute—and ORS 166.155—the racial intimidation statute—on numerous state and federal constitutional grounds.[2] In ruling in defendant's favor, the trial court did not specify its reasons. We affirm, finding that ORS 166.065(1)(b) violates Article I, section 8, of the Oregon Constitution. We therefore need not assess the further claim concerning the racial intimidation statute itself.

The complaint charges:

"The defendant * * * by reason of race and color and with intent to harass, annoy and alarm John Thomas Ritchey, * * * did unlawfully publicly insult John Thomas Ritchey by abusive words in a manner likely to provoke a violent and disorderly response, by repeatedly calling John Thomas Ritchey a 'fucking nigger.' "

ORS 166.065(1)(b) provides, in pertinent part:

---

[1] The statute has since been amended (Or Laws 1983, ch 521, § 1) and no longer incorporates ORS 166.065. It now provides, in part:

"(1) A person commits the crime of intimidation in the second degree if the person:

"* * * * *

"(c) Intentionally, because of race, color, religion or national origin of another or of a member of the other's family, subjects such other person to alarm by threatening:

"(A) To inflict serious physical injury upon or to commit a felony affecting such other person, or a member of the person's family; or

"(B) To cause substantial damage to the property of the other person or of a member of the other person's family.

"* * * * *"

[2] Defendant challenged ORS 166.155 on the basis of Article I, sections 8 and 20, of the Oregon Constitution and the First and Fourteenth Amendments to the United States Constitution. He challenged ORS 166.065(1)(b) on the basis of Article I, section 8, of the Oregon Constitution and the First and Fourteenth Amendments to the United States Constitution. He also challenged ORS 166.065 based on "vagueness."

"A person commits the crime of harassment if, with intent to harass, annoy or alarm another person, the actor:

"* * * * *

"(b) Publicly insults another by abusive or obscene words or gestures in a manner likely to provoke a violent or disorderly response;"

Article I, section 8, of the Oregon Constitution provides:

"No law shall be passed restraining the free expression of opinion, or restricting the * * * right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

In *State v. Robertson,* 293 Or 402, 649 P2d 569 (1982), the Oregon Supreme Court held that

"* * * Article I, section 8, * * * forecloses the enactment of any law written in terms directed to the substance of any 'opinion' or any 'subject' of communication, unless the scope of the restraint is wholly confined within some historical exception that was well established when the first American guarantees of freedom of expression were adopted and that the guarantees then or in 1859 demonstrably were not intended to reach * * *." 293 Or at 412.

Under *Robertson,* examining a statute in light of Article I, section 8, requires answering two questions. The first is whether ORS 166.065(1)(b) is "directed to the substance of any opinion or any subject of communication." *Robertson* explains the constitutionally significant distinction between legislation directed against the pursuit of a forbidden effect and a provision directed against speech itself:

"[A]rticle I, section 8, prohibits lawmakers from enacting restrictions that focus on the content of speech or writing, either because that content itself is deemed socially undesirable or offensive, or because it is thought to have adverse consequences. * * * [L]aws must focus on proscribing the pursuit or accomplishment of forbidden results rather than on the suppression of speech or writing either as an end in itself or as a means to some other legislative end." 293 Or at 416-17.

The state argues that ORS 166.065(1)(b) is directed against an "effect," namely, prevention of violence. Both the language of the statute itself and the legislative commentary indicate otherwise. Turning first to its own terms, the statute punishes insulting language regardless of the *actual effect* on

the listener. It does not solely proscribe words *intended* to provoke violence; rather, it proscribes language spoken with the intent to "harass, annoy or alarm."[3] Neither is it limited to words *likely to provoke violence;* it also proscribes language likely to provoke a "disorderly" response. That word, "disorderly," is defined in a separate section of ORS ch 166. Under ORS 166.025(1)(b) and (c), disorderly conduct includes making unreasonable noise or disturbing a lawful assembly of persons without lawful authority,[4] both of which may be accomplished by words rather than by physical violence.

Finally, if any doubt remains as to the statute's scope, legislative history removes it. The commentary to the statute indicates that the statute was intended to *protect the listener* from exposure to abusive or obscene language rather than to protect anyone from physical violence. The commentary to ORS 166.065 explains the similarity between ORS 166.065(1)(b) and *former* 166.025(1)(c) (*repealed by* Or Laws 1983, ch 546, § 1) a portion of the disorderly conduct statute that prohibits intentionally causing public inconvenience, annoyance or alarm by use of "abusive or obscene language, or * * * an obscene gesture, in a public place":

> "[Paragraph (b) of ORS 166.065(1)] is similar to paragraph (c) of the disorderly conduct statute designed to protect the general public from exposure to abusive or obscene language and gestures. Paragraph (b) makes the same type of conduct punishable where directed at a specific individual." Commentary, Oregon Criminal Code of 1971, p 219 (1975).

*Former* ORS 166.025(1)(c) was found unconstitutional in *State v. Spencer,* 289 Or 225, 611 P2d 1147 (1980), as an

---

[3] If the legislature's aim is to prevent fights, the legislature could make it a crime to provoke a fight. *See* Linde, *"Clear and Present Danger" Reexamined: Dissonance in the Brandenburg Concerto,* 22 Stan L Rev 1163, 1179-82 (1970).

[4] ORS 166.025(1)(b) and (c) provide:

> "(1) A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, the person:

> "* * * * *

> "(b) Makes unreasonable noise; or

> "* * * * *

> "(c) Disturbs any lawful assembly of persons without lawful authority;

> "* * * * *."

impermissible infringement upon the right of free expression safeguarded in Article I, section 8. We hold that ORS 166.065(1)(b) is directed at communication.

The second question under *Robertson* is whether the statute falls within some historical exception to Article I, section 8. The state argues that the language "likely to provoke a violent or disorderly response" limits the type of language that may be punished to so-called "fighting words" and that punishment of fighting words is an historical exception to Article I, section 8. The basis of this argument is *Chaplinsky v. New Hampshire,* 315 US 568, 62 S Ct 766, 86 L Ed 1031 (1941). In that First Amendment case, the Supreme Court stated:

> "[T]he right of free speech is not absolute at all times and under all circumstances. There are certain well-defined narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, profane, the libelous, and the insulting, or 'fighting words'— those which by their very utterances inflict injury or intend to incite an immediate breach of the peace." 315 US at 571-72. (Footnotes omitted).

On the other hand, more recent Supreme Court opinions have struck down statutes proscribing offensive language as overbroad under the First Amendment. *See Gooding v. Wilson,* 405 US 518, 92 S Ct 1003, 31 L Ed 2d 408 (1972); *see also Lewis v. New Orleans,* 415, US 130, 94 S Ct 970, 39 L Ed 2d 214 (1974).[5] Thus, *Chaplinsky* is not necessarily in point.

Even if we were to determine that ORS 166.065(1)(b) codifies the *Chaplinsky* fighting words exception to the First Amendment, however, that would not end our inquiry. *Chaplinsky* stands for the proposition that the United States Supreme Court may determine that some forms of communication are unprotected because "any benefit that may be

---

[5] The problems in drafting a constitutional statute have been summarized as follows:

> "* * * [C]lassifying particularly offensive expressions is difficult. Forms of expression vary so much in their contexts and inflections that one cannot specify particular words or phrases as being always 'fighting.' What is gross insult in one setting is crude humor in another. And what is offensive shifts over time." Greenawalt, *Speech and Crime,* (1980) Am B Found Res J 645, 770.

derived from them is clearly outweighed by the social interest in order and morality." *Chaplinsky v. New Hampshire, supra,* 315 US at 572. In other words, the court used a balancing test to determine that some forms of expression are unworthy of constitutional protection.

 Article I, section 8, by contrast, forbids legislation "restricting the right to speak freely on *any subject whatever.*" (Emphasis supplied). Article I, section 8, precludes the state legislature or the courts from balancing away the right to free expression. The legislature may only proscribe expression when the scope of the restraint is wholly within an historical exception to Article I, section 8.[6] Examples of such historical exceptions are "perjury, solicitation or verbal assistance in crime, some forms of theft, forgery and fraud and their contemporary variants." *State v. Robertson, supra,* 293 Or at 412. As "examples" we do not consider this list to be—or to have been intended to be—exclusive. We turn to such historical tools as are available in order to determine whether fighting words should be added to the list.

Oregon territorial legislation enacted before Article I, section 8, did not include any provisions forbidding "abusive or obscene" spoken language. There was a provision which proscribed challenging another to fight a duel and advising or encouraging another to accept a challenge or make a challenge. General Laws of Oregon, Crimes & Misdemeanors § 24, p 85-86 (1851). The distinction between challenging another to fight a duel with deadly weapons and publicly insulting another by abusive or obscene words likely to provoke a violent or disorderly response is the difference in the intent of the actor. In challenging to a duel, the actor intends to engage in criminal conduct, *i.e.,* dueling. In other words, the statute proscribes solicitation of a crime. That is an historical exception to Article I, section 8, and continues to be criminal. ORS

---

[6] Article I, section 8, does not preclude a civil action for abuse of the right to speak freely. *See also* Comment, *Defamation and State Constitutions: The Search for a State Law Based Standard After Gertz,* 19 Will L Rev 665 (1983). For example, the victim might bring a tort action for intentional infliction of emotional distress. *Cf. Contreras v. Crown Zellerbach,* 88 Wash 2d 735, 565 P2d 1173 (1977) (abusive racial slurs may constitute "outrageous" conduct within the meaning of Restatement (Second) Torts (1965)); *see also Hall v. The May Dept. Stores,* 292 Or 131, 637 P2d 126 (1981) (damages recoverable for intentional infliction of emotional distress).

161.435.[7] By contrast, in commiting the crime of harassment, the actor intends to "harass, annoy or alarm." As discussed previously, the harassment statute is not directed toward the prevention of fights, it is directed toward the speech itself.

Obscene language, as such, was first proscribed in Oregon in 1872. Hill's Ann. Laws, Title II, ch VII, § 1857, provided:

"If any person or persons shall, * * * use any obscene or profane language in any public place in [an unincorporated] town or village to the disturbance or annoyance of any person or persons therein, said person or persons so offending shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not less than fivenor more than fifty.' " October 19, 1872, § 1.

It was not until 1885 that the legislature added "abusive" language to the proscription. Hill's Ann. Laws, Title II, ch VII, § 1871 provided:

"Any person who shall be guilty of any violent, riotous, or disorderly conduct, or who shall use any profane, abusive, or obscene language upon any grounds used or kept as a watering-place, or a place of public resort, outside of any incorporated city, or who shall be guilty of such violent, riotous, or disorderly conduct, or use any profane, abusive, or obscene language in any house or building upon such grounds, shall, upon conviction thereof before any justice of the peace of the county, be punished by fine not exceeding fifty dollars." [November 19, 1885, § 1].[8]

Thus, legislation directed against obscene or abusive speech was not enacted until sometime after the adoption of the Oregon Constitution in 1859. We therefore determine that obscene or abusive language spoken with intent to annoy or alarm is not an "historical exception that was well established when the first American guarantees of freedom of expression

---

[7] ORS 161.435(1) provides:

"A person commits the crime of solicitation if with intent of causing another to engage in specific conduct constituting a crime punishable as a felony or as Class A misdemeanor or an attempt to commit such felony or Class A misdemeanor he commands or solicits such other person to engage in that conduct."

[8] These early statutes did not provide for imprisonment. Under our current criminal law they would be considered violations rather than misdemeanors. ORS 161.565.

were adopted and that the guarantees then or in 1859 demonstrably were not intended to reach * * *." *State v. Robertson, supra,* 293 Or at 412. It follows that the trial court's ruling was correct: the statutory scheme offends Article I, section 8, of the Oregon Constitution.

Affirmed.