Argued and submitted January 21, reversed March 20, reconsideration denied
May 10, reconsideration on attorney fees denied August 1, petition for review allowed
June 18, 1985 (299 Or 313);
petition for review on attorney fees denied August 27, 1985 (299 Or 732)

# ACKERLEY COMMUNICATIONS, INC.,
*Petitioner,*

*v.*

# MULTNOMAH COUNTY,
*Respondent.*

(83-028, 83-034 & 83-051; CA A34195)

696 P2d 1140

Donald Joe Willis, Portland, argued the cause for petitioner. With him on the brief were Ridgway K. Foley, Jr., P.C., Mildred J. Carmack, and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Peter Kasting, Assistant County Counsel, Portland, argued the cause for respondent. With him on the brief was John B. Leahy, County Counsel, Portland.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

■     Petitioner seeks review of an order of the Land Use Board of Appeals which rejected its constitutional and other challenges to Multnomah County Ordinance No. 365, as amended by Ordinances Nos. 369 and 376.[1] The ordinance regulates outdoor advertising through billboards. Petitioner's principal contention is that the county's regulation of advertising that has only "commercial" content, when "noncommercial" outdoor advertising is completely exempt from regulation under the ordinance, MCC 11.15.8639(A), violates Article I, sections 8 and 20, of the Oregon Constitution.[2] We agree, and we therefore reverse the order.

■     Before we address the principal issue, two of petitioner's other contentions require brief attention. First, it argues that the ordinance was an emergency enactment and "is invalid because it was adopted in contravention of the Multnomah County rules governing adoption of emergency ordinances." However, the specific defect petitioner ascribes to the adoption procedure could affect only the validity of the emergency clause of the ordinance and can have no bearing on the validity of the substantive provisions; accordingly, if there was any error in the proceedings, it would only be relevant to when the ordinance took effect. See Briedwell v. Henderson, 99 Or 506, 512, 195 P 575 (1921). The ordinance would long since have become effective as a nonemergency measure, even if the emergency clause were not valid. There is no issue before us that turns on when the ordinance became effective.[3]

---

[1] We will refer to Ordinance No. 365 and the amendments collectively as "the ordinance."

[2] Article I, section 8, provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

Article I, section 20, provides:

"No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

[3] For example, there is no issue in this proceeding about whether petitioner was injured by the emergency clause or by any premature application of the ordinance. We have addressed petitioner's argument regarding the emergency declaration because, if petitioner's understanding of the effect of the procedural defect on the *validity* of the ordinance were correct, it would be unnecessary for us to reach the constitutional questions petitioner raises.

■     The second preliminary matter is petitioner's contention that LUBA lacked jurisdiction to address "substantive" constitutional questions. LUBA's *statutory* authority to decide constitutional issues is clear. ORS 197.830(11), 197.835(8)(a)(E). Petitioner advances a number of *constitutional* theories for concluding that the legislature cannot permissibly give LUBA authority to decide constitutional issues of the kind involved here. None of petitioner's theories has merit. *See Forman v. Clatsop County,* 297 Or 129, 681 P2d 786 (1984); *Baxter v. Monmouth City Council,* 51 Or App 853, 627 P2d 500, *rev den* 291 Or 368 (1981).

Although petitioner's Article I, section 8, argument is extensive, the decisive part can be briefly summarized. Petitioner contends that it is impermissible for the county to regulate commercial speech and exempt noncommercial speech from regulation, because by doing so the county has selected certain expression for regulation on the basis of its content. Petitioner's Article I, section 20, argument is multi-faceted, but its only *colorable* facet of it is essentially a corollary of petitioner's Article I, section 8, argument. Petitioner maintains that there is no compelling state interest to support the county's different treatment of commercial and noncommercial outdoor advertising.

■     The fundamental disagreement between the parties is over the scope of protection that commercial speech enjoys under Article I, section 8. Although petitioner argues that the ordinance violates the First Amendment to the United States Constitution, as well as Article I, section 8, the First Amendment permits greater regulation of commercial billboards than of billboards with noncommercial content. *Metromedia, Inc. v. San Diego,* 453 US 490, 101 S Ct 2882, 69 L Ed 2d 800 (1981); *see Ohralik v. Ohio State Bar Assn,* 436 US 447, 98 S Ct 1912, 56 L Ed 2d 444 (1978). However, petitioner contends that Article I, section 8, does not permit that difference in regulation that the First Amendment allows, because the Oregon provision proscribes the enactment of laws "restricting the right to speak, write, or print freely *on any subject whatever.*" (Emphasis supplied.)

Petitioner relies on *State v. Robertson,* 293 Or 402, 649 P2d 569 (1982), and later Oregon Supreme Court deci-

sions construing the phrase "on any subject whatever" in Article I, section 8. The court said in *Robertson:*

"* * * Article I, section 8, for instance, forbids lawmakers to pass any law 'restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever,' beyond providing a remedy for any person injured by the 'abuse' of this right. This forecloses the enactment of any law written in terms directed to the substance of any 'opinion' or any 'subject' of communication, unless the scope of the restraint is wholly confined within some historical exception that was well established when the first American guarantees of freedom of expression were adopted and that the guarantees then or in 1859 demonstrably were not intended to reach. * * *

"* * * The right of free expression is as important to many people in their personal and institutional relationships as it is in the narrower 'civil liberties' related to politics, and nothing in article I, section 8, suggests that it is limited to the latter." 293 Or at 412, 435. (Footnote omitted.)

The court most recently reiterated the point that all non-abusive expression is protected equally by Article I, section 8, in *Bank of Oregon v. Independent News,* 298 Or 434, 693 P2d 35 (1985), where it stated:

"* * * There is no basis under the Oregon Constitution to provide more protection to certain non-abusive communication based upon the content of the communication. Speech related to political issues or matters of 'public concern' is constitutionally equal to speech concerning one's employment or neighbors, so long as that speech is not an abuse of the right. *See State v. Robertson,* 293 Or 402, 435, 649 P2d 569 (1982) * * *." 298 Or at 439-40.

The county argues that *Robertson* and the later cases pertain only to statutes or ordinances that "absolutely [prohibit] certain speech, with the remedy for the violation of this prohibition being a criminal sanction." Therefore, according to the county, its ordinance is not subject to any prohibition *Robertson* imposes on disparate regulation of different forms of speech, because the ordinance "merely delineates where new billboards featuring commercial speech may locate," as opposed to prohibiting speech, and it does not impose criminal sanctions. Because the county considers *Robertson* to be inapposite, it concludes that the standards for determining

whether its ordinance satisfies Article I, section 8, are identical to the standards the United States Supreme Court and other courts have developed for determining whether comparable regulations comply with the First Amendment.[4] LUBA agreed with the county and concluded that the ordinance complies with the speech provisions of both constitutions.

The county argues that the Oregon appellate courts "have not applied the *Robertson* analysis to civil regulatory laws." It relies, first, on our statement in *Bank of Oregon v. Independent News,* 65 Or App 29, 670 P2d 16 (1983), *aff'd* 298 Or 434, 693 P2d 35 (1985), that *Robertson*

"'* * * dealt with the constitutionality of statutes *prohibiting or criminalizing* communicative activity. In *Robertson* the court differentiated between the prohibition of speech and the provision of a remedy for injuries caused by speech." 65 Or App at 42. (Emphasis in original.)

The point of our distinction in *Bank of Oregon* was that *Robertson,* which relates to governmental restrictions on speech, does not bear significantly on whether private remedies are available under Article I, sections 8 and 10, for persons injured by abusive speech. The Supreme Court made the same distinction in the footnote to *Robertson,* 293 Or at 433, n 29, that we cited in *Bank of Oregon.* The county

---

[4] Ordinance No. 365 was adopted after the county's earlier billboard ordinance was declared unconstitutional by the United States District Court. That ordinance did *not* distinguish, in the way the present ordinance does, between commercial and noncommercial advertising. The federal court opinion states, as relevant:

"Thus, under *Metromedia,* the Multnomah County ordinance violates the First Amendment in two ways. First, it bans some off-site non-commercial signs while permitting on-site commercial signs, thereby providing greater protection to commercial speech than to non-commercial speech. * * *

"Second, the ordinance prohibits only those off-site non-commercial messages which advertise goods, products, services or facilities while it permits all other off-site non-commercial messages, thereby impermissibly favoring some non-commercial speech over other non-commercial speech. * * *" *Ackerley Communications, Inc. v. The City of Salem et al* (Civil Nos. 75-733-FR, 76-373-FR) (Opinion and Order at 4-5).

The county points out that the exemption of noncommercial speech in the present ordinance is a product of its efforts to cure the First Amendment problems in the earlier ordinance and to satisfy the requirements of *Metromedia* and the federal district court decision. However, the exemption of noncommercial billboards from an ordinance that regulates commercial billboards is inconsistent with Article I, section 8.

understands our statement in *Bank of Oregon* as drawing a very different distinction, *i.e.,* between governmental actions that criminalize or prohibit expression and governmental actions that restrict expression in less extreme ways. We do not agree with the county's understanding.

The county also relies on the Supreme Court's statement in *In re Lasswell,* 296 Or 121, 673 P2d 855 (1983):

> "Recent decisions have explained that this [Article I, section 8] guarantee forecloses the enactment of *prohibitory laws, at least in the form of outright prohibitions backed by punitive sanctions,* that in terms forbid speech or writing 'on any subject whatever,' unless it can be shown that the prohibition falls within an original or modern version of a historically established exception that was not meant to be ended by the liberating principles and purposes for which the constitutional guarantees of free expression were adopted. *See State v. Robertson/Young,* 293 Or 402, 412, 416-417, 433-434, 649 P2d 569 (1982) * * *." 296 Or at 124. (Emphasis supplied.)

That dictum in *Lasswell* is irrelevant to the question here; it indicates at the most that the question was not conclusively answered by *Robertson,* because the *holding* in *Robertson* did not have to go beyond the criminal prohibition and the criminal sanctions that were in issue there. The Supreme Court's more recent dictum in *Bank of Oregon,* 298 Or at 439, quoted, *supra,* 72 Or App at 621, summarizes the "all speech is equal" principle of *Robertson* without any qualifications corresponding to that in *Lasswell,* concerning whether the principle applies to regulations of speech that are not "prohibitory laws * * * backed by punitive sanctions."

■    In our view, the county misses the point of the language we have quoted from *Robertson* and the later Oregon Supreme Court cases. Although *other* parts of the *Robertson* opinion are peculiarly concerned with the conditions under which speech may be criminalized, the point of the language that is relevant here is that Article I, section 8, protects all nonabusive speech equally against governmental restriction. The county confuses those two aspects of *Robertson* and concludes that, if a regulation of speech is not criminalizing or prohibitory, the regulation may be applied selectively to different kinds of nonabusive speech. We disagree. An ordinance that imposes a regulation on one kind of nonabusive speech and no regulation on others, because of the difference

in their content, is inconsistent with Article I, section 8.[5]

■     The county argues that the ordinance can nevertheless be upheld, because it does not prohibit commercial advertising, but simply prescribes the "time, place and manner" in which such advertising is permissible. Even assuming that Article I, section 8, allows the same leeway for time, place and manner regulation that the First Amendment has been construed to allow, the county is not assisted. A content-based distinction in the way different kinds of constitutionally equal speech are regulated cannot be salvaged by the fact that the regulation restricts only the time, place and manner of engaging in the expression that has been selected for regulation. *See Metromedia, Inc. v. San Diego, supra,* 453 US at 516-17; *see also Van v. Travel Information Council,* 52 Or App 399, 628 P2d 1217 (1981).

■     The county also argues that the ordinance comes within the "historical exception analysis" in *Robertson.* The county explains:

> "* * * Since commercial speech did not gain recognition as protected expression under the First Amendment until 1975 [*see Metromedia, Inc. v. San Diego, supra,* 453 US at 504] there is no reason to believe that it was intended to be protected in 1859 by Article I, Section 8."

The county's argument turns the *Robertson* exception upside down. The Supreme Court did not suggest in *Robertson* that a particular form of expression is now subject to regulation because it was not recognized as protected speech until after the constitution was adopted. The historical exception discussion in *Robertson* contemplates that certain prohibitions and restrictions of speech remain constitutionally tolerable, because those prohibitions and restrictions have preconstitutional origins. The ordinance cannot be upheld on "historical exception" grounds.

The county's final argument is that petitioner's

---

[5] It is noteworthy that the reason the First Amendment has been construed as permitting greater regulation of commercial than noncommercial speech is that it has also been construed as placing a higher value on the latter than the former. *See, e.g., Ohralik v. Ohio State Bar Assn, supra,* 436 US at 456. Conversely, as we have noted, the Oregon Constitution has been construed as precluding any value-based distinctions between different kinds of nonabusive speech. *See State v. Harrington,* 67 Or App 608, 680 P2d 666 (1984).

understanding of Article I, section 8, leads to "sweeping and unreasonable results." We do not think that petitioner's understanding of Article I, section 8, differs from the Supreme Court's.

We hold that the ordinance violates Article I, section 8, because it regulates one kind of speech and not another, based on the difference in their content. The county *can* have no constitutionally acceptable interest in regulating commercial and noncommercial expression differently because of the content. The ordinance therefore also violates the equal privileges and immunities requirement of Article I, section 20.

Reversed.