Argued and submitted May 9, reversed July 24, 2002

# CITY OF EUGENE,
*Respondent,*

*v.*

# CHELSEA KNOX LINCOLN,
*Appellant.*

## 25-00-20957; A113829

50 P3d 1253

Howard S. Lichtig argued the cause for appellant. With him on the briefs was Lisa Johnson, Certified Law Student.

Jeffery J. Matthews argued the cause for respondent. With him on the brief was Harrang Long Gary Rudnick P.C.

Before Landau, Presiding Judge, and Brewer and Schuman, Judges.

SCHUMAN, J.

### SCHUMAN, J.

Defendant refused to obey an order to leave the Lane County Fairgrounds where she was protesting the treatment of circus animals and subsequently was convicted in Eugene Municipal Court for violating Eugene's criminal trespass ordinance. On *de novo* review, the Lane County Circuit Court rejected a variety of constitutional defenses and affirmed the conviction. Defendant appeals, and we reverse.

Although neither the municipal court nor the circuit court made findings, the material facts are not disputed. On March 20, 2000, a circus came to the Lane County Fairgrounds in Eugene. It drew, in addition to patrons, some 30 protestors, including defendant, demonstrating against the allegedly cruel and dangerous treatment of circus animals. At the first of three scheduled performances, protesters formed a corridor along both sides of a line leading from the parking lot to the ticket booth. They carried signs and spoke to patrons, some of whom spoke back. Tensions increased. One patron told a member of the Eugene Police Department, on hand to keep order, that unless the officer did something about the protesters, the patron himself would. That threat was never carried out. Although the exchanges between protesters and patrons became heated, no violence occurred, and the first performance proceeded without fights, arrests, or other incidents.

The Eugene police officers present, in consultation with fairgrounds officials, decided that the situation at the first performance had been so volatile that they would take preemptive measures to prevent violence and harassment when patrons lined up for tickets to the second show, scheduled for 3:00 p.m. Accordingly, they decided to keep protesters behind barriers that created a seven-foot-wide corridor for patrons between the parking lot and the ticket booth. Before patrons or protesters began to arrive, however, the officers and officials decided that this arrangement would probably cause a bottleneck and create more problems than it would fix. They decided instead to require the protesters to move to a spot outside the fairgrounds next to the gate through which most of the cars had to pass in order to enter the fairgrounds parking lot.

When the protesters began to arrive, a fairgrounds official told them of this decision and warned them that, if they did not obey the directive to leave, they would be arrested for trespass. Some protesters obeyed; defendant did not. Instead, she seated herself on the curb just outside of the barricaded corridor where it met the parking lot, partially obstructing the corridor but not blocking it, and, as a protest, read aloud from the Oregon Supreme Court's opinion in one of the *Whiffen v. Lloyd Center* cases. Once again, a fairgrounds official told her she would be arrested if she did not leave. A police officer told her the same thing. She did not leave and was arrested without a struggle.

The city charged defendant with violation of Eugene City Code (ECC) 4.807, which provides:

> "A person commits the crime of criminal trespass in the second degree if the person enters or remains unlawfully in or upon premises."

To "[e]nter or remain unlawfully" means "[t]o fail to leave premises that are open to the public after being lawfully directed to do so by the person in charge." ECC 4.805. The trial took place in Eugene Municipal Court. After losing her motions to dismiss based on state and federal free speech and equal protection grounds, as well as a motion to present the jury with arguments explaining and urging "jury nullification," defendant was convicted. She appealed to the Lane County Circuit Court, where her case was tried *de novo*. Once again she made and lost her constitutional motions. Subsequently, she waived her right to a jury trial and was convicted and sentenced to one day in jail. On appeal, she renews her constitutional and jury nullification arguments.

■    We begin with defendant's free speech argument, in particular with her argument based on Article I, section 8, of the Oregon Constitution. *See State v. Plowman*, 314 Or 157, 160, 838 P2d 558 (1992) (Article I, section 8, analysis precedes First Amendment analysis). That section provides:

> "No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

ECC 4.805 and ECC 4.807 together amount to a law addressing a harm that the city may regulate (remaining on public property contrary to an official's lawful request to leave) without specifying that the harm could be caused by expression; indeed, the ordinances do not refer to expression at all. Therefore, under the familiar analytical framework first set out in *State v. Robertson*, 293 Or 402, 649 P2d 569 (1982), the ordinances are not facially unconstitutional under Article I, section 8, which is to say that the city's lawmakers did not violate Article I, section 8, by enacting them. The only Article I, section 8, claim that defendant can assert is that the city's officers and prosecutors violated her rights under that section in applying the ordinances against her under the circumstances of this particular case. *Robertson*, 293 Or at 417. She could also raise a facial challenge, not under Article I, section 8, but alleging that the ordinances are unconstitutionally vague in violation of the federal Due Process Clause or state guarantees against unequal treatment or *ex post facto* laws. *Id.* at 408-09. Defendant, however, explicitly disavows *all* facial challenges.

The decision not to challenge the ordinances facially, however, opens the door to the city's argument that this court is left with no basis for overturning the conviction. That argument rests on ORS 221.360, which provides:

> "In all cases involving the constitutionality of the charter provision or ordinance under which the conviction was obtained as indicated in ORS 221.359, such person shall have the right of appeal to the circuit court in the manner provided in ORS 221.359, regardless of any charter provision or ordinance prohibiting appeals from the municipal court because of the amount of the penalty or otherwise. An appeal may likewise be taken in such cases from the judgment or final order of the circuit court to the Court of Appeals in the same manner as other appeals are taken from the circuit court to the Court of Appeals in other criminal cases. Where the right of appeal in such cases depends upon there being involved an issue as to the constitutionality of the charter provision or ordinance, the decision of the appellate court shall be upon such constitutional issue only."

According to the city's interpretation of the last sentence, an issue as to whether an ordinance is applied constitutionally is

not "an issue as to the constitutionality of the * * * ordinance"; rather, it is an issue as to the constitutionality of particular governmental action in a particular situation. Therefore, the city contends, because defendant concedes the only issue we are allowed to decide, we must affirm.

■ ■ We are not persuaded. The distinction between "facial" and "as-applied" challenges is based not on the validity of the government action involved but on whether the agent of the invalid action happens to be legislative as opposed to executive. A facial challenge asserts that lawmakers violated the constitution when they enacted the ordinance; an as-applied challenge asserts that executive officials, including police and prosecutors, violated the constitution when they enforced the ordinance. Both challenges equally attack the constitutionality of the ordinance. In fact, we have frequently reviewed as-applied challenges to the constitutionality of municipal ordinances where the challenge arose first in municipal court, most recently in *City of Eugene v. Lee*, 177 Or App 492, 494, 34 P3d 690 (2001). In that case, we explicitly said that we could, "pursuant to ORS 221.360, * * * review * * * the constitutionality of [an] ordinance as applied to defendant."

Further, even if the word "constitutionality" in the last sentence of ORS 221.360 means "facial constitutionality," our decisional authority would not be limited in this case. The mandate to limit our review to constitutional issues is conditional and not absolute: The limits apply only "[w]here the right of appeal * * * depends upon there being involved an issue as to the constitutionality of the * * * ordinance." *Id.* To understand that limitation, we must note two inferences to be drawn from ORS 221.360 and ORS 221.359. The first is that some cities could have ordinances "prohibiting appeals from the municipal court because of the amount of the penalty." ORS 221.360.[1] The second inference is that the phrase "appellate court" in those statutes refers not only to the Court of Appeals but also to the circuit court when it

---

[1] Indeed, the statute as first enacted provided for appeals from municipal court *only* if a city charter allowed them. Or Laws 1927, ch 114, § 1. A subsequent amendment, repealed in 1985, provided that appeals from municipal court were *not* allowed if the city *did* prohibit them. Or Laws 1929, ch 196, § 1, *amended by* Or Laws 1985, ch 342, § 16.

hears an appeal from municipal court. *See, e.g.,* ORS 221.359(1)(b) (referring to circuit court as "appellate court"). With those inferences in mind, the meaning of the last sentence in ORS 221.360 and its function in the appellate process from municipal court convictions becomes clear.

■       ORS 221.359 provides generally that a conviction in municipal court for violating an ordinance can be appealed to circuit court:

> "[W]henever any person is convicted in the municipal court of any city of any offense defined and made punishable by any city charter or ordinance, such person shall have the same right of appeal to the circuit court within whose jurisdiction the city has its legal situs and maintains its seat of city government as now obtains from a conviction from justice courts."

However, some cities (as we have inferred) might prohibit appeals from municipal court "because of the amount of the penalty or otherwise." ORS 221.360 states that, in *constitutional* cases, those limitations do not apply: "In all cases involving the constitutionality of the * * * ordinance," the case can be appealed to circuit court "regardless of any * * * ordinance prohibiting appeals from the municipal court because of the amount of the penalty or otherwise." Further, those same cases can be appealed to the Court of Appeals. Thus, some cases qualify for appeal from municipal court to appellate courts *only* because they are constitutional, namely, constitutional cases involving small penalties or other characteristics that would normally preclude appeal under a city's limiting ordinance. Those are the cases, referred to in the last sentence of ORS 221.360, "[w]here the right of appeal * * * *depends* upon there being involved an issue as to the constitutionality of the * * * ordinance," and it is in those cases that "the decision of the appellate court shall be upon such constitutional issue only." (Emphasis added.)

■       ORS 221.360, then, specifies that a city's ordinance prohibiting appeal of some municipal court convictions does not operate when the conviction involves a constitutional issue. In such cases, the defendant can take an appeal "regardless" of such prohibitions. The purpose of the limitation in the statute's last sentence, therefore, is to ensure that

a defendant cannot raise a constitutional issue merely as a pretext to obtain review of an otherwise nonreviewable, non-constitutional issue; when a defendant gets into the appellate courts solely on the basis of a constitutional issue (when "the right of appeal * * * depends" on the existence of a constitutional issue), that is the only issue the appellate court can decide. In the present case, the city has not cited any ordinance that would have precluded appeal had this case not involved a constitutional issue, and we have found none. In other words, the present case is *not* one that is appealable only by virtue of the fact that it raises a constitutional issue; it would have been appealable in any event under ORS 221.359. This case, then, is *not* one in which "the right of appeal * * * depends upon there being involved an issue as to the constitutionality of the * * * ordinance"; therefore our decision need *not* "be upon such constitutional issue only."

We therefore turn to the question whether the ordinances were constitutionally applied to defendant. We conclude that they were not.

Cases interpreting Article I, section 8, establish that a person cannot immunize herself or himself from the application of speech-neutral laws by accompanying otherwise illegal conduct with expressive activity. *"[S]peech accompanying punishable conduct* does not transform conduct into expression under Article I, section 8." *Huffman and Wright Logging Co. v. Wade*, 317 Or 445, 452, 857 P2d 101 (1993) (emphasis in original); *see also City of Portland v. Tidyman*, 306 Or 174, 182, 759 P2d 242 (1988) ("A grocery store gains no privilege against a zoning regulation by selling *The National Enquirer* and *Globe* at its check-out counter."). By the same token, however, government cannot automatically confer upon itself the authority to regulate otherwise protected speech merely by doing so under the authority of a speech-neutral law. Those who enforce and execute the law, like those who make it, must target regulable harm and not expression *per se* apart from harm. We must therefore decide, in this as-applied challenge, whether the city's enforcement of the criminal trespass statute against defendant had as its objective the prevention of some harm within its power to prevent or whether its objective was to prevent protected speech.

■ Clearly, the city lawfully could have taken action to prevent demonstrators from physically blocking patrons as they made their way to the ticket booth. Although there was some evidence that defendant partially blocked the corridor between the parking lot and the ticket booth, the record clearly demonstrates (and the city's witnesses conceded) that she did not prevent patrons from passing or seriously impede them. Engaging in expression "that induces some people in a busy public walkway to stop and listen while others may pass unimpeded is expressive activity that is protected by Article I, section 8." *Lee*, 177 Or App at 503.

■ ■ In fact, the uncontradicted evidence demonstrates (and the city concedes) that the city ordered defendant and the other protesters to leave the fairgrounds before the second performance because the signs carried by demonstrators at the first performance and words spoken by them at that time had created a tense atmosphere rife with the potential for violence and had offended the sensibilities of patrons and their children. Even presuming that defendant herself had carried a sign or spoken with patrons—a presumption for which there is no factual foundation in the record—and that her words were both provocative and offensive, the city's rationale for evicting her does not survive constitutional scrutiny. Speech that is likely to provoke a violent or disorderly response—so-called "fighting words"—is not unprotected under Article I, section 8. *State v. Harrington*, 67 Or App 608, 611-14, 680 P2d 666, *rev den* 297 Or 547 (1984). Nor is "offensive" speech. *Robertson*, 293 Or at 416-17; *Meltebeke v. Bureau of Labor and Industries*, 322 Or 132, 159 n 5, 903 P2d 351 (1995). Thus, when the city ordered defendant to leave its property based on her allegedly provocative or offensive speech, it violated her rights under Article I, section 8. The order was therefore not lawful. The trial court erred in denying her motion to dismiss.[2]

■ That conclusion obviates the need to discuss defendant's First Amendment claim. The federal free speech guarantee, directed solely against the federal government, applies against the city only because the principle it expresses is

---

[2] Defendant was asked by a public official to leave public property. We express no opinion on whether the outcome would be different in other circumstances.

incorporated into the Fourteenth Amendment's guarantee that state law will not deprive citizens of liberty without due process. *Palko v. Connecticut*, 302 US 319, 58 S Ct 149, 82 L Ed 288 (1937); *Gitlow v. New York*, 268 US 652, 45 S Ct 625, 69 L Ed 1138 (1924). Oregon law, including Oregon constitutional law correctly understood and applied, does not, as we have decided, deprive defendant of anything. No justiciable federal claim remains. Nor, in light of our conclusion under Article I, section 8, do we need to reach defendant's other constitutional claims.

Reversed.