Argued and submitted January 19, affirmed May 23,
petition for review denied October 18, 2007 (343 Or 363)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

WILLIAM CHARLES JOHNSON,
*Defendant-Appellant.*

Washington County Circuit Court
D0304188M; A124900

159 P3d 1213

Garrett A. Richardson argued the cause and filed the brief for appellant.

Robert M. Atkinson, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Schuman and Ortega, Judges.

SCHUMAN, J.

**SCHUMAN, J.**

■ For directing racist, obscene, and homophobic insults at the occupants of a car—over an amplified public address system, in stop-and-go traffic, and for upward of five minutes—defendant was convicted of violating ORS 166.065(1)(a)(B). That statute makes it a crime intentionally to harass or annoy another person by "[p]ublicly insulting such other person by abusive words or gestures in a manner intended and likely to provoke a violent response." Defendant demurred to the indictment on the ground that the statute on its face violates the free expression guarantee in Article I, section 8, of the Oregon Constitution.[1] The trial court disallowed the demurrer, and defendant assigns error to that ruling. He also assigns error to the court's denial of his motion for a judgment of acquittal on the ground that, if the statute is not facially unconstitutional, it was unconstitutionally applied against him under the circumstances of this case. We find no merit in either assignment of error, and we therefore affirm.

■ In demurring to the indictment, defendant asserted in effect that the legislature violated Article I, section 8, when it enacted ORS 166.065(1)(a)(B). *State v. Spencer*, 289 Or 225, 228-29, 611 P2d 1147 (1980). To determine the merit of such a claim, we must decide first whether the statute focuses on preventing or regulating expression *per se* or, on the other hand, on preventing harm that might, in some instances, be caused by expression. An example of the former would be a statute declaring that it is a crime to utter a threat. An example of the latter would be a statute declaring that it is a crime to put a person in fear by uttering a threat or brandishing a weapon. If the statute focuses on expression *per se*, then it is unconstitutional unless the state can demonstrate that "the restraint is wholly confined within some historical exception that was well established when the first American guarantees of freedom of expression were adopted and that the guarantees then or in 1859 demonstrably were not intended to reach." *State v. Robertson*, 293 Or 402, 412,

---

[1] "No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right." Or Const, Art I, § 8.

649 P2d 569 (1982); *see also State v. Plowman*, 314 Or 157, 164, 838 P2d 558 (1992), *cert den*, 508 US 974 (1993). An example of a well-established historical exception to free speech guarantees that the framers did not intend to abandon is perjury; because it is such an exception, laws making it a crime do not violate Article I, section 8. If the statute regulates expression but focuses on harm, then we must determine whether the harm is of the type that government can regulate—that is, whether the asserted harm inflicted by the speech is something other than merely *hearing that speech*. *State v. Moyle*, 299 Or 691, 699-701, 705 P2d 740 (1985). If the harm is regulable, then the statute is constitutional unless it is substantially and incurably overbroad—that is, unless it restrains a significant amount of clearly privileged expression and is not susceptible to a narrowing construction. *Plowman*, 314 Or at 164; *Robertson*, 293 Or at 412. In the present case, as we explain below, we conclude that, although ORS 166.065(1)(a)(B) regulates speech, it focuses on the prevention of harm, the harm is regulable, and the statute is not significantly overbroad.

Our inquiry into the facial constitutionality of ORS 166.065(1)(a)(B) begins with, and is informed by, *State v. Harrington*, 67 Or App 608, 680 P2d 666, *rev den*, 297 Or 547 (1984), in which this court construed and struck down an earlier version of the statute. Under that version, harassment occurred

> "if, with intent to harass, annoy or alarm another person, the actor * * * [p]ublicly insults another by abusive or obscene words or gestures in a manner likely to provoke a violent or disorderly response."

*Former* ORS 166.065(1)(b) (1983). We held that the statute violated Article I, section 8, citing a number of factors, primarily that "the statute punishes insulting language regardless of the *actual effect* on the listener." *Harrington*, 67 Or App at 611-12 (emphasis in original). In other words, as this court construed the statute, it focused not on harm but on speech itself. *Id.* at 615. We also rejected the state's argument that the prohibition, although focused on speech *per se*, was wholly contained in the well-established law that prohibited challenging a person to a duel. *Id.* at 614-15. And we noted,

"If the legislature's aim is to prevent fights, the legislature could make it a crime to provoke a fight." *Id.* at 612 n 3.

The differences between the version of the harassment statute at issue in *Harrington* and the current version are captured by the following text, in which additions to the former version are added in bold and deletions are bracketed in italics:

"A person commits the crime of harassment if **the person intentionally** * * * **[h]arasses or annoys another person by** * * *[*, with intent to harass, annoy or alarm another person, the actor* * * *] [p]ublicly **insulting such other person** [*insults another*] by abusive [*or obscene*] words or gestures in a manner **intended and** likely to provoke a violent [*or disorderly*] response[.]"

Clearly, the legislature attempted to address the central problem that we identified in *Harrington,* that is, the statute's focus on expression instead of harm.[2] Under the former statute, the crime contained the following elements: (1) a public expression ("words or gestures") that is (2) obscene or abusive, (3) likely to provoke a violent or disorderly response, and (4) intended to harass, annoy, or alarm another person. No harassment, annoyance, or alarm needed actually to occur. For that reason, no violent or disorderly reaction needed to occur either; the court presumed, logically, that if (despite the actor's intention) the expression did not harass, annoy, or alarm, it also would not provoke violence. Under the current version, the elements of the offense are (1) public expression that is (2) abusive, (3) that *actually harasses or annoys another person,* and is (4) intended and likely to provoke a violent response. The focus has subtly shifted. No crime occurs unless harm—harassment or annoyance likely to provoke a violent response—occurs, albeit harm that is caused by expression.[3]

---

[2] The 1985 Legislative Assembly changed "manner likely to provoke a violent or disorderly response" by adding "intended and" after "manner" and deleting "or disorderly." Or Laws 1985, ch 498, § 1. The remaining changes were made by the Legislative Assembly in 1987. Or Laws 1987, ch 806, § 3.

[3] Further, the harm must be intentionally inflicted. The element of intention distinguishes this case from *City of Eugene v. Lincoln,* 183 Or App 36, 50 P3d 1253 (2002). In that case, we held that an animal-rights protester could not constitutionally be stifled even though her expressive activity could have provoked a violent response. That expression, however, was not *intended* to provoke violence. *Id.* at 44.

■ That harm is within the legislature's authority to prevent. "[L]egislative power extends to protecting persons against harmful conduct by others, or whatever the legislature regards as harmful. It extends to protection against psychic or emotional as well as physical or financial harms." *Moyle*, 299 Or at 699. That is so with one exception: "harm which necessarily results only from speech or writing, so that the statutory definition is only the other side of the coin of a prohibition of the speech or writing itself," that is, the harm of causing another person to see or hear the particular words that lawmakers wish to suppress. *Id.* Harassment and annoyance that are likely to provoke a violent response are not harms of that kind. They can be—and frequently are—caused by nonexpressive activities or situations. Further, likelihood of violence is regulable even when violence itself does not occur; government can legitimately regulate action that amounts to *"pursuit or* accomplishment of forbidden results." *Robertson*, 293 Or at 416-17 (emphasis added); *accord Moyle*, 299 Or at 697; *see also State v. Garcias*, 296 Or 688, 701, 679 P2d 1354 (1984) (statutes may punish attempts); *State v. Porter*, 198 Or App 274, 279, 108 P3d 107 (2005) (statutes may punish substantial steps toward accomplishment of forbidden results).

ORS 166.065(1)(a)(B), then, focuses on regulable harm and not speech. Further, it is not substantially overbroad. Defendant suggests, and we can imagine, only one type of speech intended and likely to cause a violent response that might be privileged: inflammatory insults with political implications, for example, the epithet "traitor" used against a demonstrator during an antiwar rally. Although that situation presents nearly insurmountable proof problems involving intent, if the prosecution can overcome those problems and prove beyond a reasonable doubt that the epithet was *intended* and *likely* to provoke retaliatory violence from a specific individual, then no constitutional problem arises. The constitutional protection that generally attaches to political speech does not always survive when the speech is intentionally interwoven into an activity that is independently unlawful for reasons unrelated to expression. We conclude that ORS 166.065(1)(a)(B) is not facially unconstitutional.

■     In his second assignment of error, defendant argues that, even if ORS 166.065(1)(a)(B) is constitutional, no reasonable factfinder could conclude that, under the circumstances, the speech was intended and likely to provoke a violent response. We disagree.

Defendant and the two women who were the objects of his invective offered different versions of those circumstances. The court emphatically rejected defendant's version and found that "the state has proven all the elements of each charge beyond a reasonable doubt." We therefore relate the facts as they were described by the women. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968).

During rush hour on August 11, 2003, the two women were driving on Cornelius Pass Road in Washington County. At a point where the road narrowed from two lanes to one, the women's car, which had a "rainbow" decal on the rear, pulled in front of defendant's truck. Defendant was apparently angered. Inferring from the rainbow decal that the women were lesbians, he began tailgating, "doing the tongue thing," and, using some sort of amplification system, called the driver (an African-American) a "black bitch," "pussy-licking nigger," "lesbian dyke," and other names. The name-calling lasted for at least five minutes as the car and truck moved slowly through stop-and-go traffic, attracting the attention of other drivers and passersby. Finally, the driver got out of her car, intending to confront defendant. According to her testimony, she believed the situation was dangerous and "could have gotten really bad." Defendant's tirade made it appear to her that he wanted to fight and that he was trying "to push violence out of" her. Although a brief heated oral exchange took place, no actual physical violence occurred, but only because the driver's companion intervened and because, when the driver approached the truck, she saw that there was a young man in the back swinging a skateboard as though it were a weapon.

From these facts, the court found that defendant's behavior was intended and likely to provoke a violent reaction. We can reject that determination only if, after viewing

the evidence in the light most favorable to the state, we conclude that no rational trier of fact could have made that finding beyond a reasonable doubt. Or Const, Art VII (Amended), § 3; *State v. King*, 307 Or 332, 339, 768 P2d 391 (1989). The state argues that defendant's use of a single word, "nigger," is itself sufficiently provocative when used in a confrontation with an African-American. We need not decide that question in this case, however, because defendant's speech not only contained that word, but many others as well; it lasted over five minutes; and it was not only public, but amplified. We conclude that the court's finding was amply supported.

In sum, neither defendant's facial challenge nor his as-applied challenge has merit.

Affirmed.