Argued and submitted May 11, affirmed October 3, 2007, petition for review
denied February 13, 2008 (344 Or 109)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## MICHAEL JOHN CARR,
*Defendant-Appellant.*

### Washington County Circuit Court
D045702M; A129427

170 P3d 563

Daniel J. Stotter argued the cause and filed the briefs for appellant.

Robert M. Atkinson, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Wollheim, Presiding Judge, and Brewer, Chief Judge, and Carson, Senior Judge.

BREWER, C. J.

**BREWER, C. J.**

Defendant appeals his conviction, after a trial to the court, for criminal trespass in the second degree. ORS 164.245. The basis for the conviction was defendant's entering the grounds of a public school after the school's principal had told him not to enter. Defendant asserts that he was engaged in constitutionally protected conduct on public property and that any attempt to exclude him was unlawful. We affirm.

■      We take the facts from the record, resolving any conflicts in the evidence in the state's favor because of the verdict against defendant. *State v. King*, 307 Or 332, 339, 768 P2d 391 (1989). Defendant is a street preacher who, as part of his ministry, travels to various schools in order to preach and to pass out religious literature to students as they arrive for classes. On the morning of March 10, 2005, he did so in front of Thomas Middle School in Hillsboro. The school is on the north side of Lincoln Street. Defendant stood on a city sidewalk that runs between the north edge of the street and the south edge of the school grounds. Arriving school buses stop along the curb next to the sidewalk to discharge their students, who then enter the school by crossing the sidewalk and following a paved walk that runs from the sidewalk to the front door of the school. The sidewalk is generally used for pedestrian passage, while the land between the sidewalk and the school, including the paved walk from the school's front door, is school property and is generally used for school purposes. There are no "No Trespassing" signs or barriers on the property between the sidewalk and the school, although there are such signs some distance away on a fenced part of the school property that is used as an athletic field. Those signs are not clearly readable from the area near the sidewalk. Although school officials consider the sidewalk part of the bus loading zone, there is no evidence that the city has restricted the use of the sidewalk to that purpose, and there are no signs limiting access to it.

Defendant tried to position himself on the city sidewalk so that he was in the center of the area where the school buses arrive but was not directly in front of any of the bus

doors. That location put him close to the arriving students but did not interfere with their access to the school. Defendant wore a sandwich board with a religious statement and had religious literature with him. He called out to the arriving students in a raised voice, stating, among other things, that he had free passes to heaven and offering them the literature that he had brought with him. When school employees saw his activities, some came out to talk with him and to try to keep him away from the students. The school's principal had previously directed defendant to stay away from the area when the buses were unloading, and the employees repeated that instruction.[1] During those conversations, defendant left the sidewalk and spent some time on the paved walk leading from the sidewalk to the school. The school employees also called the Hillsboro police, who ultimately arrested defendant on a number of charges. The entire episode lasted about eight minutes.

Defendant was charged with seven offenses arising from his conduct on this and a previous occasion. The trial court granted his motions for judgments of acquittal on four of the offenses and found him not guilty of two others. However, it found him guilty of criminal trespass, sentencing him to five years' bench probation and 100 hours of community service. One condition of probation was that defendant not be on the sidewalk in front of the school; defendant did not object to that condition at the time of sentencing.

Defendant first assigns error to the trial court's denial of his motion for a judgment of acquittal on the criminal trespass charge. He asserts that his constitutional rights to free speech and to exercise his religion prevent the school principal and other employees from lawfully ordering him to stay off school property when he was on it as part of his religious activities.[2] ORS 164.245(1) provides that a "person commits the crime of criminal trespass in the second degree if the

---

[1] The evidence suggests that the principal ordered defendant to stay away from the entire area, including the sidewalk, not just from the portion that is school property. Because the trial court based its verdict on defendant's presence on the school grounds, the parties treat the instruction as limited to that area.

[2] The state argues that defendant did not preserve this issue in the trial court. After reviewing the record we conclude that, although defendant could have made his arguments in support of his motion for judgment of acquittal more clearly, both the court and the state knew that that was the basis for that motion.

person enters or remains unlawfully in a motor vehicle or in or upon premises." Defendant's arguments arise from the definition of "enter or remain unlawfully" in ORS 164.205(3). The crucial portions of that definition are:

"(b) To fail to leave premises that are open to the public after being lawfully directed to do so by the person in charge;

"(c) To enter premises that are open to the public after being lawfully directed not to enter the premises[.]"

There is evidence, which the court accepted, that the school's principal had previously directed defendant to stay off school property[3] and that defendant was on that property during this incident. Defendant relies on his asserted constitutional rights in arguing that, assuming those facts to be correct, any direction that he leave or not enter the school grounds was unlawful. He does not assert that his presence on school property was the result of his attempts to avoid the school employees' efforts to keep him away from the portion of the sidewalk where the students were getting off the buses and crossing the sidewalk.

■ ■ We first address defendant's argument under the Oregon Constitution. *See State v. Plowman*, 314 Or 157, 160, 838 P2d 558 (1992); *State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316 (1983). Article I, section 8, of the Oregon Constitution provides, in part, that "[n]o law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever[.]"[4] The Supreme Court and we have treated that provision as including a prohibition on laws that prevent people from speaking in publicly owned locations where they are lawfully present and are not interfering with the intended use of the property.[5]

---

[3] The principal qualifies as a "person in charge" under the definition in ORS 164.205(5); unless defendant's constitutional claims are correct, the principal's instruction that defendant not enter the school grounds was lawful.

[4] Defendant also asserts rights under Article I, sections 2 and 3, which protect freedom of worship and the free exercise of religious opinions. Defendant does not explain how those sections might give him more protection in this context than does Article I, section 8. Accordingly, we do not consider those arguments further.

[5] Article I, section 8, prohibits both the adoption of statutes that expressly restrain free expression and the application of otherwise valid statutes in ways

In reviewing defendant's conviction, we apply the analysis for deciding issues under Article I, section 8, that the Supreme Court established in *State v. Robertson*, 293 Or 402, 649 P2d 569 (1982). The *Robertson* framework distinguishes among three categories of laws:

> "The first *Robertson* category consists of laws that 'focus on the *content* of speech or writing' or are 'written in terms directed to the substance of any 'opinion' or any 'subject' of communication.' *State v. Plowman, supra,* 314 Or at 164 (quoting *State v. Robertson, supra,* 293 Or at 412) (emphasis in original). Laws within that category violate Article I, section 8, 'unless the scope of the restraint is wholly confined within some historical exception that was well established when the first American guarantees of freedom of expression were adopted and that the guarantees then or in 1859 demonstrably were not intended to reach.' *State v. Robertson, supra,* 293 Or at 412. The second *Robertson* category consists of laws that 'focus[ ] on forbidden effects, but expressly prohibit[ ] expression used to achieve those effects.' *State v. Plowman, supra,* 314 Or at 164. Laws in that category 'are analyzed for overbreadth.' *Ibid.* Finally, the third *Robertson* category consists of laws that 'focus[ ] on forbidden effects, but without referring to expression at all.' *Ibid.* Laws within the third category are analyzed to determine whether they violate Article I, section 8, as applied. *State v. Robertson, supra,* 293 Or at 417."

*City of Eugene v. Miller,* 318 Or 480, 488, 871 P2d 454 (1994) (some internal quotation marks omitted).

In *City of Eugene v. Lee,* 177 Or App 492, 34 P3d 690 (2001), the defendant was arrested while he was preaching in a loud voice on the Eugene pedestrian mall. The defendant's preaching drew a crowd, many of whose members became angry at some of his statements, but pedestrian traffic continued to move along the mall. The defendant was subsequently convicted of disorderly conduct under a city ordinance and appealed. *Id.* at 494-97. We applied the *Robertson* analysis and held that the constitution prevented the city

---

that have that effect. "A facial challenge asserts that lawmakers violated the constitution when they enacted the [statute]; an as-applied challenge asserts that executive officials * * * violated the constitution when they enforced the [statute]. Both challenges equally attack the constitutionality of the [statute]." *City of Eugene v. Lincoln,* 183 Or App 36, 41, 50 P3d 1253 (2002).

from convicting the defendant for speaking as he did. *Id.* at 497-502.

The disorderly conduct ordinance in *Lee* proscribed certain effects—as applied to the defendant, unreasonable noise, obstruction of traffic, and violent or threatening behavior—and did not expressly include expression as a means of achieving those effects. Thus, the defendant raised an as-applied challenge under the final category of the *Robertson* framework. He assumed that the city could normally prohibit the effects that the ordinance described but argued that applying the ordinance to his expression was unconstitutional. *Lee*, 177 Or App at 497-98. We agreed with the defendant. We first held that he had been speaking in what was indisputably a public forum and then evaluated the effects that he allegedly caused. In each case, we held that, once we construed the ordinance to avoid interfering with the defendant's rights under Article I, section 8, none of his actions was a violation. *Id.* at 499-503.

In *City of Eugene v. Lincoln*, 183 Or App 36, 50 P3d 1253 (2002), the defendant was a member of a group that protested the alleged mistreatment of animals in a circus that was performing at the Lane County Fairgrounds in Eugene. Before the first performance, the defendant and the other protesters formed a corridor along both sides of a line that led from the parking lot to the ticket booth. Because of tensions that developed between the protesters and those attending the circus, the police decided to require the protesters to move before the next performance to a spot outside the fairgrounds, next to the gate where the customers drove into the parking lot. The defendant refused to obey the order to move and stayed in the forbidden area, obstructing but not blocking the corridor to the ticket booth. The police arrested her, and she was later convicted of criminal trespass under a city ordinance that is essentially identical to ORS 164.245. *Lincoln*, 183 Or App at 38-39. On the defendant's appeal, we reversed the conviction.

As in *Lee*, the defendant in *Lincoln* made an as-applied challenge to the application of the criminal trespass ordinance to her actions. In evaluating that challenge,

we noted both that a person cannot immunize himself or herself from the application of a speech-neutral law by enmeshing otherwise illegal conduct with expressive activity and that government cannot automatically regulate otherwise protected speech under the guise of a speech-neutral law. Rather, the question was whether the city's objective was to prevent some harm that it had the power to prevent or simply to interfere with protected speech. *Lincoln*, 183 Or App at 43. The defendant did not seriously impede patrons who wished to attend the circus; rather, the city's concern was that the demonstrators at the first performance had created a tense situation by the strength of their signs and statements. However, the Oregon Constitution does not prohibit fighting words or offensive speech; thus, requiring the defendant to leave because her allegedly provocative or offensive speech might provoke a response from others violated her rights under Article I, section 8. *Id.* at 44.

Those cases suggest that a conviction that was based on defendant's presence on the sidewalk in front of the school would be problematic, a point that the state appears to concede. However, the state also observes that cases such as *Stranahan v. Fred Meyer, Inc.*, 331 Or 38, 11 P3d 228 (2000), authorize owners of private property to exclude persons from their premises despite claims that the persons are engaged in constitutionally protected conduct. The state then equates the grounds of a public school with privately owned property and concludes that the principal's order that defendant stay off those grounds was lawful. In response, defendant argues that he was on public property and that the principal, therefore, could not exclude him from it.

In our view, the parties frame the issues too sharply. *Lee* and *Lincoln* make clear that the state's authority to regulate expression on public property is not necessarily coextensive with a private party's authority to control expression on private property. On the other hand, the mere fact of public ownership does not authorize any person to go on public property for any expressive purpose at any time without regard to the use to which the public has put the property. It is not a coincidence that in *Lee* and *Lincoln* the defendants were on property that was intended for use as a public

thoroughfare or other place of public gathering. That characteristic was essential to the limited authority of the police to restrict the defendants' presence or expressive activity. As the Supreme Court has recently emphasized, the Oregon Constitution does not bar content-neutral regulations of speech that are imposed for reasons of public safety, aesthetics, or other important public purposes. *Outdoor Media Dimensions v. Dept. of Transportation*, 340 Or 275, 287-89, 132 P3d 5 (2006). Indeed, defendant does not assert that he could, without permission, enter one of the classrooms at the school during school hours to express his message and distribute his literature. The question, thus, is not simply whether the school grounds are public property; rather, it is whether the school's principal had lawful authority to impose restrictions on defendant's use of the public property.

In that regard, defendant's argument is limited. Defendant does not argue that the principal's restriction on his speech was unreasonable. Rather, he argues that the principal had no lawful authority to restrict his speech *at all*—an unsupportable assertion in light of decisional law concerning the permissibility of certain content-neutral regulation of speech. At least for that reason, under Article I, section 8, of the Oregon Constitution the trial court did not err in denying defendant's motion for a judgment of acquittal.

■ We turn to defendant's arguments under the First Amendment. He relies primarily on the Ninth Circuit's decision in *American Civ. Lib. Union, NV v. City of Las Vegas*, 333 F3d 1092 (9th Cir 2003). In *American Civ. Lib. Union, NV*, the city, in an attempt to revive its lagging downtown area, had turned a street into a pedestrian mall. The city and a private entity with which it joined to operate the mall then placed substantial restrictions on expressive activities in the new mall. The plaintiffs, individuals and groups who were affected by the restrictions, sued to enjoin their enforcement. 333 F3d at 1094-95. In evaluating the plaintiffs' claims, the Ninth Circuit described and applied the "forum analysis" that the United States Supreme Court developed for evaluating First Amendment claims concerning speech on public property.[6] The first step in that analysis is to determine

---

[6] Although we have referred to a "public forum" in *Lee* and other cases, *see, e.g.,* *Higgins v. DMV*, 170 Or App 542, 550, 13 P3d 531 (2000), *aff'd*, 335 Or 481, 72 P3d

whether an area is a traditional public forum, a designated public forum, or a nonpublic forum. A government's ability to limit speech in a traditional public forum—most commonly a sidewalk, street, or park—is extremely limited. *Id.* at 1098-99. In deciding whether the mall was a traditional public forum, the court focused on two underlying considerations: First and most significantly, whether the uses of the location are compatible with expressive activity, and second, whether the speakers have a reasonable expectation that their speech will be protected. The factors involved in determining those points are, first, the actual use and purposes of the property, particularly its status as a public thoroughfare and the existence of free public access to it; second, the area's physical characteristics; and, third, the traditional use of the property in question and of similar properties. The use of a property as a public thoroughfare may in itself be decisive. *Id.* at 1100-01. After applying those criteria to the mall, the court concluded that it was a public forum and that most if not all of the restrictions were invalid. *Id.* at 1108-09.

*American Civ. Lib. Union, NV*, does not help defendant's case. Under the criteria that the Ninth Circuit described, the school grounds are not a public forum. The school uses its property for school purposes, in this case providing a route for students to take from their buses to the school; defendant's activity is not part of that use. Unlike the sidewalk, the walkway between the school entrance and the sidewalk is not a public thoroughfare but is designed for those who are entering and leaving the school. Although defendant's actions at the precise location where he intruded may not have directly interfered with the use of the property for the school, that is the general purpose for all of the school property. The principal's direction and the legislature's provision for expressive uses make it clear that defendant did not have a reasonable expectation that his speech would be protected in that location at that time. On balance, the factors weigh heavily against defendant's claims.[7] Accordingly,

---

628 (2003), and although we treat the nature of the use of the property as significant in this case, neither we nor the Oregon Supreme Court has incorporated the federal public forum analysis into Article I, section 8.

[7] Defendant does not discuss *American Civ. Lib. Union, NV*, in depth, but he appears to rely on the Ninth Circuit's discussion of a public forum. For that reason,

the trial court did not err in denying defendant's motion for a judgment of acquittal under the First Amendment.

■     Defendant's second and third assignments of error, which respectively challenge on separate constitutional grounds the condition of probation that he "not be on north sidewalk of Lincoln Street between 6th ave and 8th ave in Hillsboro," and the duration of his probationary term, are unpreserved. For the first time in his reply brief on appeal, defendant attempts to explain why those challenges are reviewable as error apparent on the face of the record. However, even then, defendant fails to address the factors governing the exercise of this court's discretion to review asserted plain error. *See Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991) ("A court's decision to recognize unpreserved or unraised error in this manner should be made with utmost caution. Such an action is contrary to the strong policies requiring preservation and raising of error."). Thus, even if there were plain error, we would exercise our discretion not to address it.

Affirmed.

---

we do not consider whether the walkway was a designated public forum or a non-public forum or whether defendant would have any rights if it were.